Filed 7/15/21  Xera Health v. Scheele CA4/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| XERA HEALTH, LLC,<br><br>        Plaintiff, Cross-defendant and Respondent,<br><br>    v.<br><br>GEORGE SCHEELE, M.D. et al.,<br><br>        Cross-complainants and Appellants;<br><br>CALIFORNIA SCHOOLS VOLUNTARY EMPLOYEES' BENEFIT ASSOCIATION,<br><br>         Intervener and Respondent. | D077600<br><br><br>(Super. Ct. No. 37-2018-00048564-CU-BC-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Timothy M. Taylor, Judge.  Reversed with directions.

Michael Lachuk for Cross-complainants and Appellants.

Reich, Adell & Cvitan, Neelam Chandna and J. David Sackman for Intervener and Respondent.

No appearance by Plaintiff, Cross-defendant and Respondent.

In this anti-SLAPP case, George Scheele, M.D. and his closely held corporation, Nova-Life, Inc. (collectively, Scheele) appeal from an order striking 7 of 11 causes of action in his cross-complaint in intervention (cross-complaint) against California Schools Voluntary Employees' Benefit Association (VEBA) and George McGregor.

This appeal brings into sharp focus two aspects of anti-SLAPP practice. The first is the distinction the Supreme Court made in *Baral v. Schnitt* (2016) 1 Cal. 5th 376 (*Baral*) between "cause of action" and "claim." "Claim" refers to a set of facts allegedly giving rise to relief that is a proper subject of an anti-SLAPP motion. "Cause of action" means the separate counts as pleaded. (*Baral*, at p. 382.) Thus, a single cause of action may, depending on how the pleader has framed it, contain more than one claim. And conversely, again depending on how the pleading is constructed, a single claim may be alleged as a basis for more than one cause of action. (See *Dziubla v. Piazza II* (2020) 59 Cal.App.5th 140, 148, fn. 4 (*Dziubla*).)

Here, we conclude that although the cross-complaint contains 11 causes of action, it alleges just three claims: (1) defamation; (2) fraud; and (3) abuse of process. We agree with the superior court that the abuse-of-process claim arises from protected activity, Scheele did not show a probability of prevailing on that claim and, therefore, it should be stricken under Code of Civil Procedure[1] section 425.16.

The second issue is the appropriate role of declarations in making what is commonly called the "prong one" determination—that is, whether a claim arises from protected activity. If a complaint does not allege a claim arising from protected activity, may defendants respond with their own declarations

---

[1]    Undesignated statutory references are to the Code of Civil Procedure.

that essentially say—*never mind the complaint, here's what actually happened, and that's protected activity?* Following *Central Valley Hospitalists v. Dignity Health* (2018) 19 Cal.App.5th 203 (*Dignity Health*) among others, we hold that defendants bringing anti-SLAPP motions cannot satisfy their first prong burden by their own evidence of what they maintain the plaintiff's claim is really based on. In concluding otherwise, the trial court erroneously struck Scheele's defamation and fraud claims. We will remand to afford Scheele an opportunity to file a second amended cross-complaint that does not contain the abuse of process claim.

FACTUAL AND PROCEDURAL BACKGROUND[2]

A. *The Parties and the Weight Loss Product*

VEBA provides health and welfare benefits for certain school employees, retirees, and their dependents. It is administered by George McGregor of McGregor & Associates.

Scheele is a physician in his 80's; he developed a diet supplement (the Product) to prevent and treat overweight disorders and obesity. He is president and CEO of NovaLife, Inc.

In 2016, Scheele met Brian Bresnan and Patrick Henry, who were interested in marketing the Product. In September 2017, Scheele (as Licensors) and Bresnan (as Licensee) signed a "Term Sheet" that sets forth "the general terms of a licensing relationship" to Scheele's patents for the Product. Bresnan later assigned the Term Sheet to Xera Health, LLC (Xera), an entity he and Henry formed.

---

[2]     The background is based on the cross-complaint's allegations, other pleadings in the case, and evidence submitted on the anti-SLAPP motion. (See *Ralphs Grocery Co. v. Victory Consultants, Inc.* (2017) 17 Cal.App.5th 245, 249.) It should go without saying that these are not litigated facts nor findings, and we imply no view on what actually happened in this case.

In December 2017, VEBA and Xera entered into an "Engagement Letter" under which VEBA agreed to buy $350,000 of the Product from Xera. Xera also agreed to provide Dr. Scheele's consulting services to support VEBA's weight loss program, at $375/hour with a 16 hour/month minimum.

By May 2018, VEBA paid $350,000 to Xera for about 10,000 containers of the Product. But in the meantime, disputes arose between VEBA, Xera, and Scheele regarding the quality and amount of Scheele's consulting. In March 2018, VEBA and Xera amended the Engagement Letter to terminate his services. VEBA ended the weight loss program when it was unable to enlist a different physician to support it.

VEBA was left with approximately 9,750 unused containers of Product it could not use. Scheele and Xera each made conflicting claims to the Product that remained in VEBA's hands.

B. *VEBA's Complaint in Intervention and Scheele's Cross-complaint*

In September 2018, Xera sued Scheele alleging that he breached the Term Sheet. Scheele filed a cross-complaint (later amended) against Xera, which also named Bresnan and Henry as cross-defendants. Scheele's cross-complaint alleges that the Term Sheet is unenforceable and "Bresnan and Henry conspired to swindle him" of his patents.

In June 2019, VEBA filed a complaint in intervention against Xera and Scheele and later interpleaded the 9,750 unused containers of the Product. VEBA took no position in the dispute about ownership of the Product. Instead it claimed the first right to any proceeds generated from it.

In October 2019, Scheele filed a cross-complaint in intervention, and later the (first amended) cross-complaint against VEBA and McGregor.[3]

---

[3] VEBA contends that no summons was issued as to McGregor and "none can be" because a minute order entered after the case management

4

Because the cross-complaint is the centerpiece of the anti-SLAPP issues in this case, we summarize it in some detail.

After first identifying the parties, the cross-complaint contains 51 paragraphs under the heading, "Facts Applicable to All Causes of Action." These allege three distinct claims:

1. *Fraudulent inducement*, paragraphs 14, and 18 through 41. Acting on VEBA's behalf, and conspiring with Bresnan and Henry, McGregor fraudulently induced Scheele to grant Bresnan exclusive rights to Scheele's patents.

2. *Defamation*, paragraphs 47 through 52. In "early 2018," McGregor made false statements about Scheele to Bresnan, Henry and "other members of the medical community in San Diego County." These included that Scheele was incompetent, had not provided the quantity and quality of services he had promised, and falsely overbilled for his services.

3. *Abuse of Process*, paragraph 57. Bresnan, Henry, and McGregor intended to use Xera's lawsuit against Scheele to "effectively steal" his patents, "knowing he did not have the financial means to fight the litigation."

Next, the cross-complaint alleges 11 causes of action, each of which incorporates by reference all prior allegations. These causes of action are labeled: (1) fraud; (2) elder abuse; (3) tort of another; (4) declaratory relief; (5) aiding and abetting; (6) breach of contract; (7) breach of the covenant of good faith and fair dealing; (8) unfair competition; (9) defamation;

conference states " 'no new parties may be added without leave of court.' " That issue is not before us and we express no opinion on it.

5

(10) interference with prospective economic advantage; and (11) product and trade disparagement.

More specifically, and for the sake of clarity ignoring that each cause of action incorporates by reference each preceding allegation and count, the gist of each cause of action is as follows:

1. Fraud. Scheele alleges that VEBA and McGregor made "false promises, false assurances, and false representations" to Scheele that VEBA would purchase substantial quantities of the Product, and pay Scheele $375/hour, for at least 16 hours/week to develop a weight loss program for VEBA members. It further alleges that in September 2017, McGregor falsely told Scheele that he had to quickly agree to the licensing agreement with Bresnan because VEBA was considering a competing weight-loss program. Scheele alleges that in reliance, he agreed to the exclusive licensing of his patents to Xera.

2. Elder abuse. Here, the cross-complaint actually alleges all three claims. First, it realleges fraud, but adds that Scheele was 80 years old when alleged fraudulently induced to license his patents to Bresnan/Xera. Second, it alleges defamation: Scheele claims that McGregor and VEBA "made numerous false statements to others" including the San Diego County medical community that: (a) the weight loss study program prepared by Scheele was "incompetent"; (b) Scheele was "not competent" to prepare and (c) to implement the program; (d) Scheele had not provided the services he had promised VEBA; (e) Scheele was "not competent" to establish protocols for using the Product, monitoring VEBA members using it, and evaluating its effects; and he (f) overbilled for his services in preparing the weight loss program. Third, it alleges abuse of process: "Bresnan, Henry and McGregor intended from the very start of their interactions with Dr. Scheele to use

6

Xera's lawsuit against [Scheele] to effectively steal Dr Scheele's . . . patents from him, knowing he did not have the financial means to fight the litigation."

3. Tort of another. This count asserts the same fraud and defamation claims, but not the abuse of process claim.

4. Declaratory relief. This was not attacked in VEBA's anti-SLAPP motion.

5. Aiding and abetting. This alleges the fraud claim, but adds that McGregor conspired with Bresnan and Henry to fraudulently induce Scheele.

6. Breach of contract (the Engagement Letter), not attacked in the anti-SLAPP motion.

7. Breach of the implied covenant of good faith and fair dealing, not attacked in the motion.

8. Unfair competition. This realleges the fraud and defamation claims.

9. Defamation. Alleges that McGregor maliciously made false disparaging statements about Scheele to the San Diego medical community.

10. Interference with prospective economic advantage. This alleges the defamation claim and asserts that the alleged false disparaging statements "were designed to disrupt the potential beneficial economic relationship" Scheele had with Bresnan, Henry, and Xera.

11. Product and trade disparagement. This essentially realleges the defamation claim.

C. *The Anti-SLAPP Motion*

VEBA moved to strike the causes of action 2, 3, 5, and 8 through 11 under section 425.16. It asserted that "[e]ach of these causes of action is based on the allegation that VEBA made 'false statements' about Scheele in court filings, or based on the lawsuit itself."

7

To establish that the cross-complaint was based on statements made in "court filings," VEBA pointed out that paragraph 47—which lists the alleged defamatory statements—was taken "nearly verbatim" from VEBA's own complaint in intervention. Additionally, McGregor signed a declaration stating that other than in VEBA's complaint in intervention, the alleged defamatory statements were only communicated in connection with pending or threatened litigation. He also stated that the "only persons in 'the medical community' " who "could possibly be privy" to the alleged defamatory statements "would be medical personnel engaged or employed by" McGregor & Associates in connection with the weight loss program.

VEBA acknowledged that the cross-complaint itself does not allege that the defamatory statements were made in court filings or in any other way in connection with litigation. But VEBA argued that made "no difference" because in determining whether the claims arose from protected activity, the court could credit McGregor's declaration, even if the cross-complaint "does not explicitly say that these 'false statements' were made in court filings."

After considering Scheele's tardy opposition and VEBA's reply, the court conducted an unreported hearing, after which it granted VEBA's motion, striking causes of action 2, 3, 5, and 8 through 11. The court ruled that Scheele was "essentially suing [VEBA] for written or oral statements made in pleadings filed in a judicial proceeding" which was "quintessentially protected activity" under section 425.16, subdivision (e)(1). The court further determined that causes of action 2, 3, and 5 allege "the prosecution of this lawsuit itself" as a basis for Scheele's claims, which is protected activity. After sustaining almost all of VEBA's objections to a declaration Scheele filed and concluding that the litigation privilege and the "interested person

8

privilege" bar the challenged causes of action, the trial court granted the special motion to strike.

## DISCUSSION

### A. *Anti-SLAPP Principles*

The anti-SLAPP statute enables a defendant to quickly terminate meritless claims that are based on constitutionally protected rights to speak freely and petition for redress of grievances. (*Dziubla, supra,* 59 Cal.App.5th at p. 147.) In considering an anti-SLAPP motion, courts employ a two-step process. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).) First, the moving defendant must show that the challenged claim is based on conduct "arising from" an act that furthers his or her speech or petition rights in connection with a public issue. (§ 425.16, subd. (b)(1).) This includes, among others, "any written or oral statement or writing made before a . . . judicial proceeding," or "made in connection with an issue under consideration or review" by a judicial body. (§ 425.16, subds. (e)(1) & (2).)

In anti-SLAPP parlance, conduct described by section 425.16, subdivision (e) is " 'protected activity.' " (*Spencer v. Mowat* (2020) 46 Cal.App.5th 1024, 1031–1032.) "A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park, supra,* 2 Cal.5th at p. 1062.) Accordingly, in ruling on an anti-SLAPP motion, a court considers "the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Id.* at p. 1063.)

If a defendant demonstrates the challenged claim arises from protected activity, the court moves to the second phase. If not, the court should deny

9

the motion and need not address the second step.  (*Triology at Glen Ivy Maintenance Assn. v. Shea Homes, Inc.* (2015) 235 Cal.App.4th 361, 367.)

The anti-SLAPP statute does not confer immunity for claims arising from protected activity.  It only provides a procedure for weeding out, at an early stage, claims that lack even minimal merit.  Accordingly, where the defendant establishes that a claim arises from protected activity, the burden shifts to the plaintiff to demonstrate "there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1).)

These too are words of art.  The plain meaning of "probability" and "prevail" suggest that plaintiffs have to show it is more likely than not that they will win—but the burden is not that steep.  At this stage, " '[t]he court does not weigh evidence or resolve conflicting factual claims . . . [but rather] accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.' [Citation.]  Appellate courts independently review orders granting or denying a special motion to strike."  (*Dziubla*, *supra*, 59 Cal.App.5th at p. 148.)

B.  *Scheele's Defamation Claim Does Not Arise from Protected Activity*

The first prong analysis turns on two subsidiary questions:  (1) *What conduct* does the challenged claim arise from, and (2) is that conduct "protected activity" under the anti-SLAPP statute?  (*Mission Beverage Co. v. Pabst Brewing Co., LLC* (2017) 15 Cal.App.5th 686, 697–698.)  The Supreme Court has instructed that at this step, the defendant has the burden of "identifying all *allegations* of protected activity, and the claims for relief supported by them."  (*Baral*, *supra*, 1 Cal.5th at p. 396, italics added.)  " 'The question is what is pled—not what is proven.' [Citation].  And we

10

accept as true [the] pleaded facts." (*Dignity Health, supra,* 19 Cal.App.5th at p. 217.)

Here, in paragraph 47, and again later throughout, the cross-complaint alleges that "sometime in early 2018" McGregor made "numerous false statements" disparaging Scheele "to Bresnan and Henry and other members of the medical community in San Diego County," including that:

> "a.  The Weight Loss Study Program prepared by Dr. Scheele was incompetent;
>
> "b.  Dr. Scheele was not competent to prepare a Weight Loss Study Program;
>
> "c.  Dr. Scheele was not competent to implement a Weight Loss Study Program;
>
> "d.  Dr. Scheele had not provided the quantity and quality of services he had promised VEBA in connection with the Weight Loss Study Program;
>
> "e.  Dr. Scheele was not competent to provide the services of setting up a Weight Loss Study Program, establishing protocols for use of the Product, monitoring members using the Product and evaluating the effects of the use of the Product; and
>
> "f.  Dr. Scheele falsely overbilled for his services in preparing the Weight Loss Study Program."

VEBA contends, and the trial court agreed, that this claim arises from protected activity because Scheele is suing VEBA "for written or oral statements made in pleadings filed in a judicial proceeding." But nothing in these allegations, or any others in the cross-complaint supports that conclusion. Indeed, the only reasonable reading of the cross-complaint is that Scheele is *not* suing for what VEBA said in any court filing, but instead for what McGregor allegedly said about him to the San Diego medical community.

11

Moreover, the cross-complaint also alleges that the defamatory statements were made in "early 2018"—which predates both the start of this litigation in September 2018 and also VEBA's complaint in intervention, filed in August 2019. It is true that prelitigation statements may be protected activity when made in anticipation of a court action or other official proceeding (see *CKE Restaurants, Inc. v. Moore* (2008) 159 Cal.App.4th 262, 271), but the allegations here do not support such a conclusion. Although the cross-complaint is in many respects redundant and inartful, the defamation claim is specific enough for a prong one analysis. It alleges (1) the date (early 2018); (2) speaker (McGregor); (3) what was said, and (4) the recipients (San Diego medical community), including Bresnan and Henry.[4]

To transform these allegations into ones asserting protected activity, VEBA presented its own evidence of what it contends Scheele's claim is actually based on. VEBA compared the list of defamatory statements alleged in Scheele's paragraph 47 with paragraph 59 in its *own* complaint in intervention. According to VEBA, Scheele's paragraph 47 is "nearly verbatim" of its paragraph 59. For example, VEBA's complaint in intervention alleges that "Scheele intended to, and did, over-bill for services he supposedly provided." Paragraph 47(f) of the cross-complaint alleges that McGregor falsely told others that Scheele "overbilled for his services in preparing the Weight Loss Study Program." After noting striking similarities between the other subparts of paragraph 47 with its paragraph

---

[4]    A complaint that is too vague in some or all of these respects might preclude a prong one analysis. The defendant's remedy in such cases is to first demur on the basis of uncertainty to obtain an amended complaint specific enough to allow a first prong analysis. (See *Dignity Health, supra,* 19 Cal.App.5th at pp. 206–207.)

12

59, VEBA claimed that Scheele *must* be suing VEBA for statements it made in its complaint, i.e., protected speech in a judicial proceeding.

The obvious problem with VEBA's argument is that it did not file its complaint in intervention until the summer of 2019—and Scheele's cross-complaint alleges that McGregor defamed him in early 2018. A claim cannot arise out of protected activity a year-and-a-half before the protected activity even occurs. To get around that, VEBA asserts that any defamatory statements McGregor made in early 2018 are protected as "the precursors to and '*in connection with*' the very same statements made" in its complaint in intervention. Noting that courts have adopted " 'a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16,' " VEBA contends there is a "direct line" from any alleged defamatory statements in "early 2018" to the statements in VEBA's paragraph 59, which VEBA claims Scheele copied into his own paragraph 47.

For evidence of this "direct line," VEBA supported its motion with a declaration from McGregor. He states that other than in paragraph 59 of VEBA's complaint in intervention, "such statements, or anything similar was only ever communicated": (1) among McGregor & Associates staff responsible for administering the weight loss program; (2) to VEBA's board of directors, in reporting to them the progress of the weight loss program; (3) to "contractors and subcontractors involved in setting up and administering" the program; (4) with Xera in the context of "administration and disputes arising" under the Engagement Letter; (5) with VEBA's attorneys in

13

connection with this litigation; and (6) in his own prior declaration filed in connection with this litigation.[5]  In summary, McGregor declared:

> "The only persons in 'the medical community in San Diego['] who could possibly be privy to the [alleged defamatory statements] would be medical personnel engaged or employed by [McGregor & Associates] in connection with the [weight loss] [p]rogram, as described above.  Any such communications would be subject to restrictions imposed by HIPAA."

The fundamental flaw in VEBA's argument is that the cross-complaint does not allege any of this.  A defendant cannot hijack the plaintiff's complaint, redraft it to force the allegations into protected activity, and then assert that the reworked pleading is subject to an anti-SLAPP motion.  "Consistent with the primary role of the complaint in identifying the claims at issue, courts have rejected efforts by moving parties to redefine the factual basis for a plaintiff's claims as described in the complaint to manufacture a ground to argue that the plaintiff's claims arise from protected conduct."  (*Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 936 (*Bel Air Internet*).)

For example, in *Dignity Health*, *supra*, 19 Cal.App.5th 203, a hospital asserted that the plaintiff's claims were based on protected medical peer review activities.  But the complaint did not allege facts concerning peer review, and actually disavowed basing any claims on it.  The appellate court rejected the defendant's attempt to construct a peer review claim through its own declarations.  The court explained that " '[t]he question is what is pled— not what is proven.' " (*Id.* at p. 217.)

---

[5]  VEBA's argument presumes that all of these scenarios make the speech protected activity.  For purposes of discussion, we make the same assumption without deciding the point.

Admittedly, this case is not quite *Dignity Health*. Scheele did not expressly disavow basing his defamation claim on McGregor's statements to staff, VEBA's board of directors, and "contractors and subcontractors." But alleging that McGregor defamed him in early 2018 to Bresnan, Henry, and other members of the San Diego medical community is effectively the same thing. By negative inference, Scheele is not alleging a claim based on statements to, for example, VEBA's board of directors.

VEBA's argument fails because in the first step of the anti-SLAPP analysis, "[a] plaintiff's complaint ultimately defines the contours of the claims." (*Bel Air Internet, supra*, 20 Cal.App.5th at p. 936.) " 'The drafter of the complaint is the master of the complaint, and gets to choose what his claim . . . is all about, and what it's based on, what it arises from, to use the language of the anti-SLAPP statute.' " (*Dignity Health, supra*, 19 Cal.App.5th at p. 212.)

*Medical Marijuana, Inc. v. ProjectCBD.com* (2016) 6 Cal.App.5th 602 (*Medical Marijuana*) is also instructive. Affirming the denial of an anti-SLAPP motion, this court stated:

> "It would be inappropriate for us to insert into a pleading claims for relief based on allegations of activities that plaintiffs simply have not identified, even if the parties suggest on appeal how plaintiffs might have intended to frame those claims or attempt to identify the specific conduct or assertions of statements alleged to be false on which plaintiffs intended to base such claims for relief.[ ] It is not our role to engage in what would amount to a redrafting of the first amended complaint in order to read that document as alleging conduct that supports a claim that has not in fact been specifically alleged, and then assess whether the pleading that we have essentially drafted could survive the anti-SLAPP motion directed at it." (*Medical Marijuana, supra*, 6 Cal.App.5th at p. 621, fn. omitted.)

15

Here, the trial court erred by using McGregor's declaration to transform the cross-complaint into something it is not. Instead, the court should have denied the motion to strike the defamation claim because VEBA did not sustain its burden of showing it arises from protected activity.[6]

In seeking to uphold the trial court's ruling, VEBA maintains that even in deciding prong one issues, courts consider not just the pleadings but also supporting and opposing declarations. As a general proposition, we agree. Section 425.16, subdivision (b)(2) provides, "the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (See *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) But like so many other areas of law, the devil is in the details and general propositions go only so far.

The dispositive issue here is not *whether* declarations can be considered in the prong one analysis, but rather *how* they may properly be used. "[T]he rule in section 425.16, subdivision (b)(2) that a court must consider affidavits as well as pleadings in the first step of the anti-SLAPP procedure does not provide license to ignore the allegations of a plaintiff's complaint. Rather, it provides a defense against artful pleading in which 'the defendant's act of petitioning the government is made to appear as defamation, interference with business relations, restraint of trade and the like.' " (*Bel Air Internet*, *supra*, 20 Cal.App.5th at p. 937.) Thus, the role of declarations in the prong one analysis is to expose what is actually a protected claim, but pleaded as something else. (*Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 413 [" 'a plaintiff cannot avoid operation of the anti-SLAPP statute by attempting, through artifices of pleading, to characterize an action as a " 'garden variety' "

---

[6] Because VEBA did not sustain its prong one burden on the defamation claim, it is unnecessary to consider its contention that the trial court should have disregarded Scheele's opposition because it was filed late.

16

tort or contract claim when in fact the claim is predicated on protected speech or conduct' "]; *Baral, supra,* 1 Cal.5th at p. 392 ["the application of section 425.16 cannot reasonably turn on how the challenged pleading is organized"].)

Scheele's cross-complaint does not evoke these concerns. This is not a case where the allegations are intentionally vague or conclusory in a way that would allow Scheele to base his claim on protected activity while at the same time arguing that it somehow is not. No declarations are necessary to pierce through an artfully pleaded SLAPP claim masquerading as something else.

## C. *Scheele's Fraud Claim Does Not Arise From Protected Activity.*

The cross-complaint also alleges that while acting on VEBA's behalf, McGregor conspired with Bresnan and Henry to make false promises to Scheele to induce him to grant them an exclusive license to the Product. Scheele alleges these "false promises, false assurance and false representations" were made in 2017, and climaxed when McGregor "falsely" told Scheele that he needed to promptly reach an agreement with Bresnan because VEBA was considering a competing weight loss product. Based on the "urgency in Dr. Scheele's mind created by McGregor's falsely [stating] . . . he needed to promptly reach an agreement . . . Scheele signed" the Term Sheet. These allegations are the gist of Scheele's "first cause of action" entitled "fraud." For example, paragraphs 21, 22, 29, and 35, which we have quoted above, are expressly realleged in that count in paragraphs 60, 65, and 67.

This claim does not arise out of protected activity. Perhaps more to the point on appeal, VEBA has essentially admitted as much in two ways. First, VEBA carefully carved the fraud count out from the rest of its motion—by *not*

17

asking the court to strike Scheele's fraud cause of action. Given VEBA's tooth-and-nail fight, this could hardly have been an oversight.

Second, in its motion papers VEBA limited its argument to only "two types" of protected activity: (1) the defamation claim; and (2) "the prosecution of this lawsuit itself," i.e., abuse of process. VEBA persuaded the trial court to strike the *other* causes of action (such as the second, for elder abuse, the third, for "tort of another," and so on) on the grounds that defamation and abuse-of-process were the basis for each of those causes of action.

On appeal, VEBA employs the same approach. It simply ignores Scheele's claim for fraudulent inducement as if it did not exist. To the extent VEBA's brief acknowledges the allegations of fraudulent inducement, it does so only by burying a reference to "false promises" within its discussion of the abuse of process claim. The order striking causes of action 2, 3, 5, and 8 through 11 must be reversed because each alleges a claim for fraudulent inducement that does not arise from protected activity.

D. *Scheele's Abuse of Process Claim Was Properly Stricken*

Abuse of process occurs when one uses the court's process for a purpose other than that for which the process was designed. " 'To succeed in an action for abuse of process, a litigant must establish that the defendant (1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings.' " (*Yee v. Superior Court* (2019) 31 Cal.App.5th 26, 34.)

Paragraph 57 of Scheele's cross-complaint alleges that Bresnan, Henry, and McGregor intended to use Xera's lawsuit against him to "effectively steal" his patents, "knowing he did not have the financial means to fight the litigation." As mentioned, it is incorporated by reference into each of the 11

causes of action. And it is alleged in full again in the elder abuse cause of action.

As pleaded, this claim is at the core of the anti-SLAPP statute. (See *JSJ Limited Partnership v. Mehrban* (2012) 205 Cal.App.4th 1512, 1521 [filing a lawsuit is an act in furtherance of the constitution right of petition, regardless of whether it has merit].) Accordingly, the trial court properly considered whether Scheele had met his burden of establishing a prima facie case on this claim.

On the prong two analysis, the court must consider whether the plaintiff has produced "sufficient admissible evidence to establish the probability of prevailing on the merits" of the claim. (*Area 55, LLC v. Nicholas & Tomasevic, LLP* (2021) 61 Cal.App.5th 136, 161.) Here, the only evidence Scheele submitted was his own 13-paragraph declaration with two accompanying exhibits. However, the superior court sustained VEBA's objections to nearly all of it—9 of the 13 paragraphs. Scheele does not challenge those evidentiary rulings on appeal. Accordingly, any contention that the court abused its discretion in sustaining these objections is forfeited. (*Frittellli, Inc. v. 350 North Canon Drive, LP* (2011) 202 Cal.App.4th 25, 41.)

The one paragraph in Scheele's declaration left standing merely states that having been terminated in March 2018, he was "never afforded" an "opportunity to implement the weight loss program for VEBA" and "evaluate the effects of the use of the Product." This fails to address the abuse of process claim and is clearly insufficient to show a probability of prevailing on it. Accordingly, the trial court correctly ordered the abuse of process claim stricken.

19

E. *Proceedings on Remand*

As we have explained, Scheele's cross-complaint alleges all three claims in each cause of action, but only the abuse of process claim should be stricken. Instead of dismissing the entire cause of action that contains both unprotected and protected activity, the court should have excised the claims of protected activity and allowed the claims of unprotected activity to go forward. (*Baral, supra*, 1 Cal.5th at p. 396.)

Accordingly, on remand the trial court should afford Scheele a reasonable period of time to file a second amended cross-complaint in intervention that omits the stricken abuse of process claim. We leave to the trial court's discretion any additional orders involving that amended pleading—except to note that it would likely not be an abuse of discretion to order Scheele to eliminate all unnecessary redundancy. (§ 425.10, subd. (a)(1).)

On the assumption that after appeal it would be a prevailing defendant on the anti-SLAPP motion, VEBA asks that we remand with directions to determine the amount of attorney's fees and costs it is entitled to under section 425.16, subdivision (c)(1). Given VEBA's only partial success on appeal, the trial court should determine in the first instance any entitlement to fees and costs incurred on appeal, and if so, the amount of each.[7] (See generally, Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2021) ¶ 7:1136 [anti-SLAPP fees and costs where only partial success on appeal].)

---

[7] VEBA informs us that in September 2020, the trial court granted its motion for attorney's fees incurred in bringing the anti-SLAPP motion, and that "[n]o appeal was filed as to that [j]udgment for fees and costs." Any issues involving that award, including its appealability, is not before us, has not been briefed, and we express no opinion on it.

## DISPOSITION

The order granting the special motion to strike is reversed and the matter is remanded to the superior court to enter an order striking only the abuse of process claim, and to conduct further proceedings consistent with this opinion.


DATO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


AARON, J.