[No. B197077. Second Dist., Div. Six. Jan. 24, 2008.]

CKE RESTAURANTS, INC., Plaintiff and Appellant, v.
ALICIA MOORE et al., Defendants and Respondents.

COUNSEL

Call, Jensen & Ferrell, Scott J. Ferrell, Melinda Evans, Scot D. Wilson; Mullen & Henzell and Lawrence T. Sorenson for Plaintiff and Appellant.

Ropers, Majeski, Kohn & Bentley, Thomas H. Clarke, Jr., Terry Anastassiou and Timothy A. Dolan for Defendants and Respondents.

OPINION

**COFFEE, J.**—Respondents are Alicia Moore and her counsel, Ropers, Majeski, Kohn & Bentley. Moore, through her counsel, sent a notice to appellant CKE Restaurants, Inc. (CKE), stating that some of their food products contained a cancer-causing chemical, naphthalene, requiring CKE to warn consumers. CKE brought a declaratory relief action against respondents requesting a determination of whether CKE's food products complied with Proposition 65. Respondents filed a special motion to strike the complaint under Code of Civil Procedure section 425.16, the anti-SLAPP (strategic lawsuit against public participation) statute.[1] They contended that the declaratory relief action was an attempt to abridge their right of free speech.

The filing of a Proposition 65 notice is a protected activity. Because CKE was unable to meet its burden to show a probability of prevailing on its declaratory relief action, the trial court granted respondents' motion and issued a judgment in their favor. We affirm.

FACTS

*Safe Drinking Water and Toxic Enforcement Act*

The underlying action arose from an alleged violation of the Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65), codified in Health and Safety Code sections 25249.5 through 25249.13. (*Baxter Healthcare Corp. v. Denton* (2004) 120 Cal.App.4th 333, 345 [15 Cal.Rptr.3d 430].) Proposition 65 prohibits a business from knowingly and intentionally exposing an individual to a chemical known to the state to cause cancer, without providing a warning to the consumer. However, a business is not required to provide a warning where the "exposure poses no significant risk assuming lifetime exposure at the level in question for substances known to the state to cause cancer . . . ." (Health & Saf. Code, § 25249.10, subd. (c).)

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

 The potential violator must be given 60 days' notice of a suspected violation before a lawsuit can be filed. (Health & Saf. Code, § 25249.7, subd. (d)(1).) The notice enables government agencies to investigate and, if necessary, to institute a lawsuit against the polluter. (*Yeroushalmi v. Miramar Sheraton* (2001) 88 Cal.App.4th 738, 748 [106 Cal.Rptr.2d 332] [adequacy of Proposition 65 notices].) It also provides for citizen enforcement if the applicable government agencies fail to undertake enforcement after service of an appropriate notice of violation. (*Id.* at p. 744.) Public enforcement is encouraged, to avoid the need for a private lawsuit and to effect resolution outside the courts. (*Id.* at p. 750.) In 2002, the state Office of Environmental Health Hazard Assessment added naphthalene to its list of chemicals known to cause cancer.

CKE operates fast food outlets, which include "Carl's Jr." restaurants. Among its menu items, Carl's Jr. offers french fries, "crisscut" fries, onion rings and fried zucchini (food products). In 2006, respondents obtained a sample of CKE french fries and sent the sample to a laboratory for testing. The tests revealed the presence of naphthalene.

On July 26, 2006, Alicia Moore, through her counsel, sent CKE a "Sixty-Day Notice of Violation." The notice was addressed to CKE, as well as Burger King, McDonald's and Ore-Ida. Copies were served on the state Attorney General, the district attorney for each county in California and city attorneys in six major cities.[2]

On August 28, 2006, counsel for CKE wrote to respondents expressing an intention to file a declaratory relief action against them unless they withdrew the 60-day notices. Three weeks later, CKE filed its complaint. It alleged that under Proposition 65 the regulatory level of naphthalene "deemed to pose no significant risk" is 5.8 micrograms per day. It claimed that none of its food products "come[s] close to containing a daily exposure" exceeding that amount. CKE contended that its lawsuit did not arise from the sending of the notices, but from "the underlying issues raised in [respondents'] letters— namely the rights and obligations of CKE regarding its French Fries and other Food Products under Proposition 65 . . . ."

---

[2] The notice alleged that Proposition 65 "violations occur when California consumers purchase and ingest [CKE's] French fry products . . . . The products contain naphthalene, a chemical known to the State of California to cause cancer and reproductive toxicity. . . . [¶] [CKE] did not and does not provide consumers with clear and reasonable warnings before it exposes them to naphthalene . . . . These violations have occurred every day for at least the last year, and will continue every day until the naphthalene is removed from the Products or until clear and reasonable warnings are given. The Proposition 65 violations noted herein occur in each of California's 58 counties, or in such Counties as [CKE's] Products are sold or consumed."

CKE challenged the allegations in respondents' 60-day notice that (1) CKE has violated Proposition 65 when consumers ingest its products; (2) CKE's french fries contain naphthalene; (3) California residents are exposed to naphthalene when they ingest CKE's french fries; (4) CKE has failed to warn its consumers of naphthalene exposure; and (5) violations have occurred daily for at least one year and will continue until the naphthalene is removed or warnings are given.

CKE requested a judicial declaration that ingestion of its food products does not pose any significant risk of causing cancer or reproductive harm in humans; that CKE is not required to provide any Proposition 65 warnings; and that CKE is in compliance with Proposition 65.

*Special Motion to Strike*

Respondents filed a special motion to strike CKE's declaratory relief action under section 425.16. They contended the filing of the Proposition 65 notice was an exercise of free speech, a protected activity, and CKE could not establish the probability that it would prevail on its action for declaratory relief.

In its opposition to the motion, CKE argued that its declaratory relief action did not "arise from" any protected activity. It claimed that the anti-SLAPP statute does not apply to declaratory relief actions and that "well-documented analytical testing confirms that there is *no* detectable amount of naphthalene in *any* of the Food Products," thus there was no violation of Proposition 65. It contended that the complaint did not challenge the sufficiency of the Proposition 65 notice or seek to enjoin respondents from filing a lawsuit.

Attached to the opposition was the declaration of Scot D. Wilson, counsel for CKE. He visited a Carl's Jr. restaurant near his office in Newport Beach and ordered six orders each of french fries, crisscut fries, onion rings and fried zucchini. He immediately drove to West Coast Analytical Service, Inc. (WCAS), in Santa Fe Springs, California, where the food samples were tested.

Michael Shelton is a chemist at WCAS, a laboratory specializing in trace chemical analysis. Shelton declared that under Proposition 65 the "no significant risk level" (NSRL) for naphthalene is 5.8 micrograms per day. Shelton tested the food samples provided by Wilson and found that none of the samples contained naphthalene greater than 0.01 parts per million, an amount under the NSRL.

Also attached to the opposition was the declaration of James R. Coughlin, Ph.D., an expert in the regulatory, nutritional and toxicological evaluation of chemicals in food products and the environment. Coughlin declared that he reviewed the test results produced by Shelton, along with other scientific reports, and concluded that the food products do not "expose California consumers to any detectable amount of naphthalene—let alone an amount of naphthalene that exceeds the NSRL under Proposition 65."

Richard Fortman, executive vice president of operations for CKE, declared that he had reviewed the declarations and concluded that the food products "do *not* expose consumers to *any* level of naphthalene in violation of Proposition 65 . . . ." In addition, he stated that his marketing data reflects that CKE customers do not consume more than a single large size order per day of any one of the four food products, so they are not exposed to unsafe levels of naphthalene.

Respondents filed a reply to CKE's opposition. Attached was the declaration of toxicologist Harry Louis Skalsky. He reviewed a laboratory analysis of CKE food products, as well as the declaration of James Coughlin. Skalsky concluded that there is a concentration of 490 micrograms of naphthalene per kilogram of food products. The average individual ingests 13 grams of the food product per day. This results in a daily exposure of 6.37 micrograms—an amount exceeding the Proposition 65 NSRL of 5.8 micrograms per day.

*Trial Court's Ruling*

The trial court issued an order after hearing, granting respondents' motion to strike. It concluded that the declaratory relief action arose from the exercise of a protected activity and that CKE had failed to meet its evidentiary burden. The test results on a small amount of food from a single store were "insufficient to sustain a judgment that [CKE] is in compliance with Proposition 65 regarding naphthalene." The court rejected CKE's argument that the anti-SLAPP statute is inapplicable to a "pure" declaratory relief action, noting that the Supreme Court had expressly declined to decide that issue in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 4 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon*).

## DISCUSSION

*Anti-SLAPP Statute*

The anti-SLAPP statute was enacted "to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056 [39

Cal.Rptr.3d 516, 128 P.3d 713].) When a lawsuit is filed arising from a person's exercise of free speech, the trial court may strike any cause of action arising from any act of that person in furtherance of the person's right of petition for the redress of grievances or of free speech. (§ 425.16, subds. (a), (b)(1).) We review an order granting or denying a motion to strike de novo. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 [46 Cal.Rptr.3d 638, 139 P.3d 30]; *Rusheen*, at p. 1055.)

■ Ruling on an anti-SLAPP motion to strike is a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon, supra*, 29 Cal.4th 53, 67.)

■ It is established that the filing of Proposition 65 intent-to-sue notices is a protected activity. (*Equilon, supra*, 29 Cal.4th 53, 67.) Thus, the next inquiry is whether CKE's action arose from the filing of the 60-day notices. We must therefore consider whether the declaratory relief action arose from respondents' protected free speech or petitioning activity. (*Ibid.*; see also *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76 [124 Cal.Rptr.2d 519, 52 P.3d 695] (*Cotati*).)

### *"Arising From" Prong of the Anti-SLAPP Statute*

■ The Supreme Court issued three companion cases to clarify application of the anti-SLAPP statute where it is alleged that a lawsuit arose from exercise of a protected activity. (*Cotati, supra*, 29 Cal.4th 69, 72, fn. 2; see also *Navellier v. Sletten* (2002) 29 Cal.4th 82 [124 Cal.Rptr.2d 530, 52 P.3d 703]; *Equilon, supra*, 29 Cal.4th 53.) There is no requirement that a defendant prove that the plaintiff brought the action with the intent to chill the defendant's free speech. (*Equilon*, at pp. 58–59.) The defendant need only establish that the challenged lawsuit arose from his exercise of his right of free speech. (*Id.* at p. 61; *Cotati*, at pp. 74–75; *Navellier*, at p. 89.)

To determine whether the "arising from" prong is met, a court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(1), (2).) "[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been

an act in furtherance of the right of petition or free speech. [Citation.] In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." (*Cotati, supra*, 29 Cal.4th 69, 78.) A defendant meets the burden by showing that his conduct falls within one of the four categories described in section 425.16, subdivision (e).[3] (*Equilon, supra*, 29 Cal.4th 53, 66.) "[T]he mere fact an action was filed after the protected activity took place does not mean it arose from that activity." (*Cotati*, at pp. 76–77.)

*Equilon* is particularly instructive. There, a consumer group, Consumer Cause, Inc., filed a Proposition 65 notice against the successor-in-interest to two oil companies. It alleged that the oil companies had polluted the groundwater by discharging benzene, toluene and lead into the soil. Rather than respond to the notice, Equilon filed an action for declaratory and injunctive relief. It claimed that the notice had not been properly served and sought a declaration that the notice failed to comply with the California Code of Regulations by not describing the toxic discharges with sufficient particularity. It also sought an injunction barring Consumer Cause from filing a Proposition 65 enforcement action.

Consumer Cause moved to strike Equilon's complaint under the anti-SLAPP statute. The court concluded that the pleadings and affidavits established that Equilon's actions arose from Consumer Cause's act of filing a Proposition 65 notice and was therefore subject to a motion to strike. (*Equilon, supra*, 29 Cal.4th 53, 67.)

*Cotati* illustrates the opposite situation—a lawsuit was filed after the protected activity took place, yet did not arise from that activity. In *Cotati*, a group of mobilehome park owners challenged the constitutionality of a rent stabilization ordinance. The owners filed a declaratory relief action in federal court alleging that the city's ordinance constituted a taking. The city claimed the ordinance was constitutional and filed a declaratory relief action in state court in an attempt to gain a more favorable forum in which to litigate the matter.

---

[3] Section 425.16, subdivision (e) provides that an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct ·in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

The mobilehome park owners moved to strike the city's complaint, alleging that the city's action constituted a SLAPP suit. The Supreme Court disagreed, concluding that both actions concerned constitutionality of the ordinance. The city's complaint referred to the validity of the ordinance, but made no reference to the federal action itself, and therefore was not subject to a motion to strike. (*Cotati, supra*, 29 Cal.4th 69, 79–80.)

The facts before us differ markedly from those in *Cotati*. In its complaint, CKE directly challenged the merits of the 60-day notice by referring to and quoting from the 60-day notice. CKE requested a judicial determination that its food products complied with Proposition 65. Instead of using the 60-day period to avoid litigation, CKE used it to commence litigation. Moreover, CKE threatened to sue respondents unless they withdrew their notice. CKE's action arose *entirely* from the filing of the Proposition 65 notice. The trial court recognized this, stating, "without the Notice, there would have been no actual, present controversy, and no controversy at all." Thus, no basis existed for CKE's filing of the declaratory relief action. (See *Cotati, supra*, 29 Cal.4th 69, 79.)

■ We conclude that CKE's action arose from respondents' protected activity of filing the Proposition 65 notice and was properly subject to a motion to strike.

*Baxter Healthcare Corp. v. Denton, supra*, 120 Cal.App.4th 333, upon which CKE relies, is inapposite. In *Baxter*, a manufacturer of prescription medical devices obtained a judicial declaration that a chemical present in its devices posed no significant risk of cancer in humans. Thus, a Proposition 65 warning was not required. (*Baxter*, at p. 355.) Here, it is undisputed that naphthalene is cancer causing to humans and is present in CKE's food products. Nor does *Baxter* offer guidance as to the issues before us. It concerns neither the application of the anti-SLAPP statute nor the use of declaratory relief actions within the context of section 425.16.

At oral argument, CKE's counsel argued that we should follow the holding in *City of Riverside v. Stansbury* (2007) 155 Cal.App.4th 1582 [66 Cal.Rptr.3d 862], which, relying on *Cotati*, concluded that a challenge to the validity of a ballot initiative was not subject to the anti-SLAPP statute. *City of Riverside* is factually dissimilar and inapplicable to the facts before us.

## Probability of Prevailing on the Merits

As to the second prong of the anti-SLAPP statute, CKE was unable to meet its burden of demonstrating a probability of prevailing on its claim. (§ 425.16, subd. (b)(1).) CKE did not make an evidentiary showing sufficient to support the relief it sought. CKE offered several declarations, which were based upon the testing of a small amount of food from a single restaurant. Moreover, test results were contradictory. Respondents' experts concluded that the naphthalene levels in CKE's food products were high enough to constitute a violation of Proposition 65, while CKE offered evidence to the contrary.

The judgment is affirmed. Costs on appeal are awarded to respondents.

Gilbert, P. J., and Perren, J., concurred.