Filed 3/10/22  Veeva Systems v. Medidata Solutions CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| VEEVA SYSTEMS, INC.,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>MEDIDATA SOLUTIONS, INC. et al.,<br><br>  Defendants and Appellants. | A158736, A159062<br><br>(Alameda County<br>Super. Ct. No. RG17868081) |

Veeva Systems, Inc. (Veeva) sued Medidata Solutions, Inc. (Medidata) and Sparta Systems, Inc. (Sparta) (collectively defendants) for declaratory and injunctive relief, alleging that defendants' use and enforcement of noncompete and nondisclosure agreements (NCA/NDAs) against their former employees violate Business and Professions Code section 16600.[1]  Defendants moved to strike Veeva's operative complaint under the anti-SLAPP law (Code Civ. Proc., § 425.16)[2] on the grounds that Veeva's claims (1) targeted their protected acts of enforcing the NCA/NDAs in litigation, and (2) lacked

---

[1]  Business and Professions Code section 16600 provides in pertinent part that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

[2]  Further section references are to the Code of Civil Procedure unless specified otherwise.

1

probable success on the merits. The trial court struck two of Veeva's seven causes of action—the fourth cause of action for declaratory relief and the seventh cause of action under the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.)—but denied the motions as to the remaining claims, which the court found did not arise from protected activity. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

We take the following facts from the pleadings and evidentiary submissions on the anti-SLAPP motions.

Veeva is a cloud-computing software technology company headquartered in Pleasanton. Medidata is a New York-based software-as-a-service technology company. New Jersey-based Sparta provides quality management solutions to the life sciences industry. The three are competitors in the life sciences technology industry and compete for employees. Defendants require their employees to enter into NCA/NDAs prohibiting them from disclosing defendants' confidential information during and after their employment, and from directly or indirectly engaging in competition with defendants for a restricted period of time after their employment ends.[3] Veeva does not require its employees to sign noncompete agreements.

In January 2017, Medidata filed suit against Veeva and several former Medidata employees in the United States District Court for the Southern District of New York (hereafter the federal action). Medidata alleged that Veeva induced former employees Alan Mateo, Jason Rizzo, Sondra Pepe, Michelle Marlborough, and Richard Young to join Veeva and disclose

---

[3] The restricted period under the Medidata NCA/NDA is one year. For former Sparta employees, the restricted period is nine months.

Medidata's trade secrets in violation of their obligations under the NCA/NDAs.[4]

Around the same time that Medidata filed the federal action, Sparta filed suit against Veeva and former Sparta employee Scott Mitreuter in New Jersey state court, alleging that Veeva induced Mitreuter to leave Sparta and disclose Sparta's proprietary information to Veeva. Sparta filed a similar lawsuit in New Jersey state court against Veeva and former Sparta employee Joby George. We will refer to these suits as the New Jersey actions.

In July 2017, Veeva filed the instant action against defendants[5] in California, alleging that their NCA/NDAs were unenforceable restraints on trade in violation of Business and Professions Code section 16600. Veeva alleged that its efforts to recruit defendants' employees to work for Veeva in California was made more difficult and expensive due to defendants' NCA/NDAs. It also alleged that defendants "threaten to and actively attempt to enforce these unlawful agreements in order to prevent employees from leaving Defendants for a better employment opportunity with a California-based employer."

Medidata responded to Veeva's complaint by filing a demurrer and anti-SLAPP motion, arguing that Veeva's claims arose from protected

---

[4] In March 2017, Medidata voluntarily dismissed the individual defendants from the federal action.

[5] Veeva also named Quintiles IMS Incorporated (IMS) as a defendant. In a prior unpublished opinion, we reversed a judgment in favor of IMS after the trial court sustained IMS's demurrer to Veeva's first amended complaint. (*Veeva Systems Inc. v. Quintiles IMS, Inc.* (Oct. 31, 2019, A155603) (*Quintiles IMS*).) The parties dispute whether *Quintiles IMS* operates as the "law of the case" as to defendants here, but we need not resolve that question, as the particular merits issues addressed in our analysis of the second anti-SLAPP prong simply do not overlap with those discussed in *Quintiles IMS*.

3

activity—e.g., Medidata's efforts to protect its trade secrets by filing the federal action. The trial court sustained the demurrer with leave to amend and "dropped" the anti-SLAPP motion as moot. Veeva filed a first amended complaint, to which defendants each demurred and filed anti-SLAPP motions. After defendants elected to have the demurrers heard first, the trial court sustained the demurrers with leave to amend and again "dropped" the anti-SLAPP motions as moot. Veeva filed a second amended complaint.

Defendants again demurred and filed anti-SLAPP motions. At a hearing in December 2018, the trial court did not rule on the pending motions. Rather, the court found that Veeva's second amended complaint suffered from technical issues and did not comply with the order granting leave to amend. The court continued the matter to March 2019 and instructed Veeva to either file a motion for leave or omit the improper allegations.

In February 2019, Veeva filed a "Corrected Second Amended Complaint" (CSAC) to address the deficiencies identified by the trial court. Veeva also filed a motion for leave to file a supplemental complaint, which was granted. In May 2019, Veeva filed its "Supplemental Complaint to the Corrected Second Amended Complaint" (hereafter the supplemental complaint). We now summarize the material allegations.

Veeva alleges that it conducts its principal corporate activities and recruitment of employees at its Pleasanton headquarters, and that a significant number of its employees and customers are based in California. Defendants likewise conduct significant business in California and recruit Veeva's current and former employees. According to Veeva, defendants' NCA/NDAs are unlawful under Business and Professions Code section 16600 and make Veeva's efforts to recruit employees more difficult. For instance, in

4

2017, a "Medidata employee declined to even consider working for Veeva because of the Medidata non-compete/NDA," and in 2018, after Veeva began recruiting Medidata employee Justin Zacchone, Medidata sent a letter to Zacchone in which it advised Zacchone of his continuing obligations under the NCA/NDA, and reserved its rights and remedies thereunder.

Veeva alleges there is an actual controversy "over the legality and enforceability of the Medidata non-compete as it relates to Veeva's recruitment and/or employment of Mateo, Rizzo, Pepe, and Zacchone" and "other current and former employees of Medidata for employment in California within the meaning of California law." As "[e]vidence" of this controversy, Veeva describes Medidata's federal action, including the allegation that Veeva tortiously interfered with Medidata's employees' NCA/NDA obligations by hiring and employing them. Veeva alleges it has lost money and property within the meaning of the UCL by "paying its employees' defense costs" in the federal action, and spending "attorney time and management time in analyzing and providing advice concerning the unlawful agreement," which "has resulted in the diversion of resources and economic injury."

As to Sparta, Veeva alleges it hired a number of former Sparta employees, including Sanjay Goswami in January 2017, John Marshall in May 2017, and Joby George in February 2018. Veeva also offered a job to former Sparta employee "Jane Roe," who accepted but later withdrew due to Sparta's NCA/NDA. Veeva alleges there is an actual controversy over the legality and enforceability of the Sparta NCA/NDA as it relates to Veeva's recruitment and/or employment of former and current Sparta employees. As "[e]vidence" of this controversy, Veeva alleges that Sparta has "accused Veeva of intentionally interfering with the Sparta non-compete/NDA by stating that

it will defend and indemnify employees accused of violating [Sparta's] unlawful agreement by working for Veeva." Veeva further alleges that Sparta sent letters to Veeva's CEO claiming that Veeva's employment of Marshall and George would violate the NCA/NDAs, and threatening to enforce its rights under the NCA/NDAs.

Veeva alleges that in light of the Sparta NCA/NDA, Veeva did not assign Marshall to any of his former Sparta clients, including those based in California, which made Marshall less productive than he otherwise would have been. Veeva also incurred attorney fees and costs in response to Sparta's litigation threats concerning Marshall and George and Sparta's filing of the New Jersey actions. Veeva further alleges "the diversion and loss" of "economic resources," including "valuable management time and other resources recruiting Jane Roe," and "additional management time and . . . recruiting costs in finding and hiring a different candidate."

The CSAC asserts four causes of action for declaratory relief and three causes of action under the UCL. In the first cause of action, Veeva alleges there is an actual controversy "concerning Veeva's right to recruit Defendants' current and former employees," notwithstanding "the employees' place[s] of residence or the existence of a non-compete/NDA."[6] Veeva seeks a declaratory judgment that it had the right to solicit and recruit Mateo, Pepe, Rizzo, Zacchone, Goswami, George, and Roe, as well as "other current and former employees" of defendants.

---

[6] It is implied in the CSAC that Mateo, Rizzo, Marshall, and George do not reside in California, as Veeva alleges these individuals are "employed in California within the meaning of California law" because they travel regularly to California, report to California-based executives, regularly interact with Veeva personnel in California and/or clients with operations in California.

6

The second cause of action for declaratory relief alleges an actual controversy "over Veeva's right and obligation to indemnify and/or defend former Medidata and Sparta employees who face threatened or actual litigation arising from their employment with Veeva in alleged violation of the Medidata or Sparta non-compete/NDA." Veeva alleges it has an obligation under Labor Code section 2802 as well as the right and desire to defend and indemnify its employees when faced with threatened or actual litigation from defendants arising from posttermination NCA/NDAs, but defendants consider this to be illegal " 'interference.' "

The third cause of action alleges an actual controversy over "[d]efendants' right to require employees to sign non-compete/NDAs that include in their scope the provision of services in California within the meaning of California law, as well as the enforceability of these Agreements as to employees employed 'in California' within the meaning of California law." Veeva seeks declaratory judgments that defendants violate California law when they enter into NCA/NDAs that include within their scope the provision of services in California to a California-based employer.

The fourth cause of action alleges an actual controversy "over Defendants' right to seek enforcement of their standard non-compete/NDAs that include in their scope the provision of services in California to a California-based employer. Such efforts at enforcement include threatened and actual litigation against Veeva for interference with these non-competes/NDAs."

In the fifth, sixth, and seventh UCL causes of action, Veeva alleges that defendants engage in unfair competition when they: "require employees to enter into the standard non-compete/NDAs that inhibit Veeva's ability to recruit their employees to provide services in California to a California

7

employer within the meaning of California law" (fifth cause of action); "enter into post-termination non-compete agreements with employees that include in their scope the provision of services in California for a California-based employer" (sixth cause of action); and "threaten to or actively seek to enforce their standard non-competes/NDAs that include in their scope the provision of services in California" (seventh cause of action). In each of these claims, Veeva alleges it has suffered an injury in fact as a result of defendants' unfair competition by incurring defense and litigation costs, diverting resources, incurring recruiting and administrative costs, and spending excessive management and attorney time as a result of Defendants' unfair competition.[7]

In September 2019, the trial court overruled defendants' demurrers to the CSAC and supplemental complaint.

The hearing on the anti-SLAPP motions (pending since August 2018) was continued several times until the matter was finally heard on October 23, 2019. The trial court granted the anti-SLAPP motions in part as to the fourth cause of action for declaratory relief and seventh cause of action under the UCL, finding that these claims arose from protected activity because they targeted defendants' enforcement of the NCA/NDAs, and that the claims were barred by the litigation privilege. The court denied the anti-SLAPP motions as to the remaining causes of action.

---

[7] The supplemental complaint contains new allegations regarding events in the New Jersey actions, including Sparta's dismissal of its New Jersey complaint against Veeva and George with prejudice, and modifications that Medidata made to its standard NCA/NDA after the filing date of this action, including a "California Exclusion" and a "Non-Competitive Activities Exception."

Defendants appealed from the partial denial of their anti-SLAPP motions, while Veeva cross-appealed from the partial granting of the motions. The appeals were consolidated for purposes of briefing, oral argument, and decision.

## DISCUSSION

Section 425.16 authorizes a special motion to strike causes of action that arise from any act in furtherance of the moving defendant's "right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) The anti-SLAPP law "allows defendants to request early judicial screening of legal claims targeting free speech or petitioning activities" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 880–881), and its provisions must be construed broadly (§ 425.16, subd. (a)).

Resolution of an anti-SLAPP motion involves potentially a two-prong inquiry. First, the moving defendant must make a prima facie showing that the challenged claim or claims arise from the defendant's constitutionally protected free speech or petition rights. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 381–382, 396 (*Baral*).) If the defendant makes this showing, the burden shifts to the plaintiff to demonstrate the claim's merit by establishing a probability of success. (*Id.* at p. 396.) We review de novo a trial court's decision to grant or deny an anti-SLAPP motion. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325–326 (*Flatley*); *Navellier v. Slatten* (2003) 106 Cal.App.4th 763, 768.) We do not weigh the evidence, and we accept " ' " 'as true the evidence favorable to the plaintiff' " ' " and evaluate " ' " 'the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' " ' " (*Feldman v. 1000 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1478 (*Feldman*).)

9

## A. Timeliness of Hearing

Before addressing the merits of this appeal, we first consider Veeva's procedural argument that the anti-SLAPP motions were not timely heard by the trial court. Section 425.16, subdivision (f) (425.16(f)), specifies that an anti-SLAPP motion "shall be scheduled by the clerk of the court for a hearing not more than 30 days after service of the motion unless the docket conditions of the court require a later hearing." As set forth above, defendants filed and served their motions in August 2018, and the hearing on the motions was continued several times to October 23, 2019. In its October 24 order, the trial court rejected Veeva's argument that the anti-SLAPP motions should be denied as untimely, stating "[t]he Court routinely hears anti-SLAPP motions outside of the 30-day window due to the conditions of the Court's docket."

Veeva relies on *Greka Integrated, Inc. v. Lowrey* (2005) 133 Cal.App.4th 1572 (*Greka*) for the position that *defendants* have the burden of showing that docket conditions required a later hearing. But *Greka* relied on a former version of section 425.16(f) that has since been amended, as well as decisional authority that was explicitly overruled by the amendment. (*Greka*, at pp. 1577–1578, citing *Decker v. U.D. Registry, Inc.* (2003) 105 Cal.App.4th 1382 (*Decker*) and *Fair Political Practices Com. v. American Civil Rights Coalition, Inc.* (2004) 121 Cal.App.4th 1171 (*Fair Political Practices Com.*); see Stats. 2005, ch. 535, § 3 [expressing Legislature's intent to overrule *Decker* and *Fair Political Practices Com.*].) As of 2005, section 425.16(f) places the burden on the court clerk, rather than the movant, to schedule the hearing on the anti-SLAPP motion within the 30-day window. (*Chitsazzadeh v. Kramer & Kaslow* (2011) 199 Cal.App.4th 676, 685, fn. 7 (*Chitsazzadeh*). Accordingly, section 425.16(f) does not justify denial of an anti-SLAPP motion

solely because the moving party failed to ensure the timely scheduling of a hearing. (*Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1349 (*Hall*).)

Veeva next argues it is "self-evident" that the delay in this case was not justified by the trial court's docket conditions. According to Veeva, the delay is attributable to the court making various other orders such as instructing Veeva to correct the deficiencies in the second amended complaint and ruling on Veeva's motion to file a supplemental complaint. Medidata responds that these delays were due to Veeva's decision to add factual allegations to its second amended complaint that went beyond the scope of leave to amend. The point is well-taken. We are not inclined to find in Veeva's favor on the docket conditions exception due to delays occasioned by Veeva's own pleading deficiencies and the trial court's willingness to allow their correction.

Veeva also complains that the delay was caused by the trial court ruling on defendants' demurrers before the anti-SLAPP motions. But Veeva cites no authority requiring trial courts to prioritize an anti-SLAPP motion before a demurrer, particularly where, as here, the moving defendant elects to proceed with the demurrer first. (See *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland* (2020) 54 Cal.App.5th 738, 751 [trial court did not err in sustaining demurrer with leave to amend even though anti-SLAPP motion was pending but hearing was scheduled for after demurrer hearing].) Indeed, the anti-SLAPP statute's timing requirements are generally intended to provide a speedy remedy to moving *defendants*. (See *Chitsazzadeh*, *supra*, 199 Cal.App.4th at p. 682.)

We acknowledge the delay of over a year between defendants' service of the anti-SLAPP motions and the hearing on said motions was significant. We also do not endorse any invocation of the docket conditions exception

11

based on the trial court's "routine[]" practice as opposed to actual conditions that reasonably preclude a timely hearing. That said, we do not lightly question the trial court's inherent authority to manage its own docket (see *Walker v. Superior Court* (1991) 53 Cal.3d 257, 267), and based on the arguments and record before us, we conclude Veeva fails to show an abuse of discretion in the trial court's refusal to deny the anti-SLAPP motions as untimely. We now proceed to our de novo review of the anti-SLAPP motions.

## B. First Prong—Arises from Protected Activity

To satisfy the first step of the anti-SLAPP analysis, a defendant must demonstrate "that the 'conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e) [of section 425.16]' [citation], and that the plaintiff's claims in fact *arise* from that conduct [citation]." (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 620.) As relevant here, the categories of protected conduct include statements made before a judicial proceeding and those in connection with an issue under consideration by a judicial body. (§ 425.16, subd. (e)(1), (2).)

There appears to be no dispute that defendants' statements, writings, and pleadings in the New Jersey and federal actions constituted protected activity under section 425.16, subdivision (e)(1) and (2), or that defendants' prelitigation correspondences such as the letter to Zacchone were "made 'in anticipation of litigation "contemplated in good faith and under serious consideration" ' " to merit anti-SLAPP protection. (See *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1268.) The dispute concerns whether Veeva's causes of action are actually *based on* this protected activity.

"A claim arises from protected activity when that activity underlies or forms the basis for the claim. [Citations.] Critically, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in

12

furtherance of the right of petition or free speech.' [Citations.] . . . '[T]he focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.' " (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1063 (*Park*).) "In deciding whether a lawsuit is a SLAPP action, the trial court must distinguish between speech or petitioning activity that is mere *evidence* related to liability, and liability that is *based on* speech or petitioning activity." (*Gotterba v. Travolta* (2014) 228 Cal.App.4th 35, 42 (*Gotterba*).) "In short, in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park*, at p. 1063.) When relief is sought based on allegations of protected and unprotected activity, the allegations of unprotected activity are disregarded at the first stage, as are allegations of protected conduct that are " 'merely incidental' or 'collateral' " or "that merely provide context, without supporting a claim for recovery[.]" (*Baral, supra*, 1 Cal.5th at p. 394.)

### 1. *Declaratory Relief Causes of Action*

"An anti-SLAPP motion lies against a complaint for declaratory relief, among other types of causes of action." (*Gotterba, supra*, 228 Cal.App.4th at p. 40.)[8] "In order to state a claim for declaratory relief, there must be an 'actual controversy' relating to the legal rights and duties of the parties."

---

[8] We reject Veeva's contention that its declaratory relief claims are outside the scope of the anti-SLAPP law because the statute targets "causes of action," not remedies. *Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154 (*Marlin*) provides no assistance to Veeva, as it merely held that the anti-SLAPP statute did not apply to a "prayer for an injunction," and the court otherwise addressed the merits of an anti-SLAPP motion against a declaratory relief cause of action. (*Marlin*, at pp. 160–162.)

13

(*Country Side Villas Homeowners Assn. v. Ivie* (2011) 193 Cal.App.4th 1110, 1118, citing Code Civ. Proc., § 1060.)

### a. First, Second, and Third Causes of Action

As set forth above, the first cause of action alleges a controversy between the parties concerning Veeva's right to recruit defendants' current and former employees, notwithstanding the NCA/NDAs and the employees' places of residence outside California. The third cause of action alleges a controversy over defendants' right to require employees to sign NCA/NDAs that include in their scope the provision of services in California within the meaning of California law. These claims are not based on defendants' protected litigation activities, but rather, on the effect and scope of defendants' NCA/NDAs as to Veeva, a California-based employer, who wants to recruit and hire defendants' employees.

Defendants urge a contrary conclusion, highlighting repeated references in the CSAC and supplemental complaint to the federal and New Jersey actions. However, we agree with Veeva that these allegations of litigation conduct merely point to *evidence* that the alleged controversies exist. (See *Gotterba*, *supra*, 228 Cal.App.4th at p. 42 [attorney's letters threatening litigation over contract dispute were merely evidence that controversy existed].)

*Park* is instructive in this regard. The Supreme Court held that a discrimination claim brought by a university professor who was denied tenure did not arise from the university's protected statements and communications during the official tenure process. Employing an elements-focused approach, *Park* held that the elements of the discrimination claim "depend not on the grievance proceeding, any statements, or any specific evaluations of him in the tenure process, but only on the denial of tenure

14

itself and whether the motive for that action was impermissible." (*Park*, *supra*, 2 Cal.5th at p. 1068.) The university's protected statements "may supply evidence of animus, but that does not convert these statements themselves into the basis for liability." (*Ibid*.) In so holding, *Park* approved of a formulation by the trial court in that case that the plaintiff " 'could have omitted allegations regarding communicative acts or filing a grievance and still state the same claims.' " (*Ibid*.)

Similarly, in *City of Cotati v. Cashman* (2002) 29 Cal.4th 69 (*City of Cotati*) the Supreme Court held that a state court declaratory relief action filed by the City of Cotati alleging a controversy with mobilehome park owners over the constitutionality of a rent stabilization ordinance did not arise out of protected activity even though it was filed in response to the owners' prior federal court declaratory relief action challenging the constitutionality of the same ordinance. (*City of Cotati*, at p. 71.) As the court explained, "the mere fact an action was filed after protected activity took place does not mean it arose from that activity. The anti-SLAPP statute cannot be read to mean that 'any claim asserted in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under section 425.16, whether or not the claim is *based on* conduct in exercise of those rights.' " (*City of Cotati*, *supra*, 29 Cal.4th at pp. 76–77.) "[A] claim filed in response to, or in retaliation for, threatened or actual litigation is not subject to the anti-SLAPP statute simply because it may be viewed as an oppressive litigation tactic. [Citation.] That a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from such." (*Id*. at p. 78.)

*Park* and *City of Cotati* clearly illustrate why Veeva's first and third causes of action do not arise from defendants' protected activity in the federal

15

and New Jersey actions. While these claims may have been in response to or triggered by defendants' prelitigation letters and lawsuits, the claims themselves arise not from those activities but from the underlying dispute over whether Business and Professions section 16600 applies to defendants' NCA/NDAs when California-based Veeva recruits and hires from defendants' employee pool. Indeed, had Veeva and the named employees been so inclined, they could have brought such declaratory relief claims preemptively. (See, e.g., *Advanced Bionics Corp. v. Medtronic, Inc.* (2002) 29 Cal.4th 697, 701 [preemptive declaratory relief suit by employee and California-based employer against former Minnesota employer to declare noncompete agreement void under Business and Professions Code section 16600].) Or viewed another way, Veeva could simply have " 'omitted allegations regarding [defendants' litigation activities] and still state the same claims' " for declaratory relief regarding the effect and scope of defendants' NCA/NDAs when their former employees are recruited and hired by a California-based employer. (*Park*, *supra*, 2 Cal.5th at p. 1068.)

*Lunada Biomedical v. Nunez* (2014) 230 Cal.App.4th 459 (*Lunada*) and *CKE Restaurants, Inc v. Moore* (2008) 159 Cal.App.4th 262 (*CKE*) do not persuade us otherwise. In *Lunada*, a consumer and her attorneys served notice on the manufacturer of a dietary supplement, alleging the company violated the Consumer Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.) through false and misleading advertising. (*Lunada*, at pp. 465–466.) The manufacturer then filed a complaint against the consumer and her attorneys seeking a judicial declaration regarding the accuracy and legality of the manufacturer's advertising. (*Id.* at p. 467.) The consumer and her attorneys filed an anti-SLAPP motion, which the trial court granted. (*Id.* at p. 468.)

In affirming, the appellate court rejected the manufacturer's argument that its declaratory relief claim arose not from the CLRA notice and correspondences between counsel, but from the dispute as to whether the company had violated the CLRA. (*Lunada*, *supra*, 159 Cal.App.4th at pp. 471–478.) The court reasoned that not only did the company's "declaratory relief action refer[] extensively to the CLRA Notice and [counsel's] letter (*id.* at p. 472), but "the CLRA Notice was required under the CLRA before an action for damages could be filed and thus is part of the litigation process. But for the CLRA Notice and demand letters, there would be no dispute. . . . In construing the anti-SLAPP statute broadly, as we must do [citation], we believe that the CLRA Notice and correspondence not only preceded and triggered the declaratory relief action, but they were also the basis of the cause of the action." (*Id.* at p. 473.)

*CKE* similarly held that a plaintiff's declaratory relief action arose from the defendant's service of a statutorily-required notice. There, the defendant and her attorneys served a restaurant (CKE) with a 60-day notice under the Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65) claiming the restaurant's french fries contained a cancer-causing chemical that the restaurant failed to disclose as required by law. (*CKE*, *supra*, 159 Cal.App.4th at pp. 265–266.)[9] CKE responded by threatening to file a declaratory relief action unless the 60-day notice was withdrawn, and then filing a complaint for a declaratory judgment that none of its food products reached the risk threshold for required notice under Proposition 65. (*CKE*, at

---

[9] Proposition 65 generally requires businesses to provide notice of knowingly exposing an individual to a chemical known to cause cancer. (*CKE*, *supra*, 159 Cal.App.4th at pp. 265–266.) A potential violator must be given 60 days' notice of a suspected violation before a lawsuit can be filed. (*Ibid.*)

17

p. 266.)  The trial court granted the defendants' anti-SLAPP motion, and the appellate court affirmed.  In concluding the action arose from protected activity, the appellate court reasoned, "CKE directly challenged the merits of the 60-day notice by referring to and quoting from the 60-day notice.  CKE requested a judicial determination that its food products complied with Proposition 65.  Instead of using the 60-day period to avoid litigation, CKE used it to commence litigation.  Moreover, CKE threatened to sue respondents unless they withdrew their notice.  CKE's action arose *entirely* from the filing of the Proposition 65 notice.  The trial court recognized this, stating, 'without the Notice, there would have been no actual, present controversy, and no controversy at all.' "  (*CKE*, at p. 271.)

To the extent *Lunada* and *CKE* suggest that a complaint's "extensive[]" references to a defendant's protected litigation conduct are enough to satisfy the first anti-SLAPP prong (*Lunada, supra*, 230 Cal.App.4th at p. 472; *CKE, supra*, 159 Cal.App.4th at p. 271), we respectfully disagree.  We do not think such references, however extensive they may be, dispense with the first prong inquiry of determining what conduct *actually underlies* the basis for the challenged claims.  (See *Park, supra*, 2 Cal.5th at p. 1068 [although discrimination complaint alleged university's comments and statements during grievance proceeding and tenure process, complaint arose from decision to deny tenure, not communications leading to it]; *San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343, 354 ["fact that a complaint alleges that a public entity's action was taken as a result of a majority vote of its constituent members does not mean that the litigation challenging that action *arose* from protected activity, where the measure itself is not an exercise of free speech or petition"], cited with approval in *Park*, at p. 1064.)

18

In any event, *Lunada* and *CKE* are distinguishable in that they involved prelitigation notices that were statutory prerequisites to filing suit. Indeed, *Lunada* distinguished *City of Cotati* on this basis, observing that in *City of Cotati*, "the protected activity amounted only to a prior lawsuit, [while] the protected activities here included a CLRA Notice, without which there would be no controversy." (*Lunada*, *supra*, 230 Cal.App.4th at p. 475.) "The typical prelitigation demand letters involving liability are not prerequisites to filing lawsuits seeking damages." (*Lunada*, at pp. 476–477.) Here, the alleged protected acts "amounted only to . . . prior lawsuit[s]" (*id.* at p. 475) and "typical prelitigation demand letters," not statutorily-required acts that created the controversies alleged in the first and third causes of action (*id.* at p. 476).

The second cause of action presents a closer call, but we ultimately conclude it, too, does not arise from protected activity. In alleging a controversy over Veeva's right and obligation to indemnify and defend its employees "who face threatened or actual litigation" from defendants, the second cause of action may very well have been brought "in response to" defendants' litigation conduct. But that is not sufficient to trigger anti-SLAPP protection. (*City of Cotati*, *supra*, 29 Cal.4th at p. 78.) The claim itself arises not from any controversy over defendants' protected litigation conduct, but from a controversy regarding Veeva's statutory obligations and rights pursuant to Labor Code section 2802.

For these reasons, we conclude the trial correctly found that the first, second, and third causes of action do not arise from protected activity.

### b. Fourth Cause of Action

The fourth cause for declaratory relief alleges an actual controversy "over Defendants' right to seek enforcement of their standard non-

19

compete/NDAs" as to the identified employees and other current or former employees. The allegations regarding defendants' "enforcement" efforts are reasonably construed as referring to defendants' prelitigation and litigation statements as detailed throughout the CSAC. This means the fourth cause of action is based on defendants' enforcement of the NCA/NDAs in prelitigation and litigation statements and writings. The claim accordingly arises from protected activity.

Veeva attempts to avoid this conclusion by arguing that the "principal thrust" or "gravamen" of the fourth cause of action is not defendants' enforcement efforts but their use of illegal NCAs/NDAs.[10] The alleged enforcement efforts, Veeva contends, are merely "evidence of Defendants' anti-competitive scheme." We are not persuaded, as Veeva simply cannot allege an actual controversy in the fourth cause of action without the allegations of defendants' enforcement efforts. If we omit such allegations, there would be no controversy alleged. (See *Park*, *supra*, 2 Cal.5th at p. 1068.) The enforcement efforts are not simply evidence of another controversy; rather, the alleged controversy *is* whether defendants have the right to engage in those very efforts. Accordingly, the trial court correctly found that the fourth cause of action arises from protected activity.

---

[10] In supplemental briefing, defendants contend the Supreme Court in *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995 (*Bonni*) rejected the "gravamen" approach on the first stage of the anti-SLAPP analysis. Defendants read *Bonni* too broadly. The high court rejected a narrower contention that where a single cause of action alleges multiple factual bases, a court may consider whether the gravamen of the entire cause of action is based on protected activity rather than engage in the "claim-by-claim" approach employed by most appellate courts since *Baral*. (*Bonni*, at pp. 1010–1012.) Here, Veeva does not seek to use the gravamen approach in the manner rejected in *Bonni*.

## 2. *UCL Causes of Action*

To state a claim under the UCL, the plaintiff must allege that the defendant committed an "unlawful, unfair or fraudulent business act or practice." (Bus. & Prof. Code, § 17200.) The UCL " ' "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.) Standing to sue under the UCL "extends to 'a person who has suffered an injury in fact and has lost money or property as a result of the unfair competition[.]" (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 321.)

We conclude the seventh cause of action arises from protected activity. Veeva alleges that defendants violate the UCL "when they threaten to or actively seek to enforce their standard non-competes/NDAs that include in their scope the provision of services in California." Without the allegations of defendants' enforcement efforts, there would be no act of unfair competition alleged in the seventh cause of action. (*Park*, *supra*, 2 Cal.5th at pp. 1063, 1068.)

For the remaining UCL claims, however, we reach a different conclusion. Neither the fifth nor sixth cause of action is based on defendants' protected activities. Rather, these claims allege that defendants engage in unfair competition by requiring employees to enter NCA/NDAs that include the provision of services to a California-based employer.

Defendants contend the first prong is met because Veeva alleges that its injury in fact for purposes of UCL standing consists of "defense fees and costs to date" incurred in the New Jersey and federal actions. Veeva responds that the injury in fact requirement is not an "element" of a UCL claim for purposes of the *Park* test. We think Veeva has the better position

21

here. Assuming, without deciding, that the UCL's injury in fact requirement is germane to *Park*'s elements-based approach, Veeva's allegation of incurred defense costs is not essential to state a UCL claim because Veeva alleges other forms of injury in fact, e.g., diverted resources, recruiting and administrative costs, decreased productivity. Thus, Veeva's fifth and sixth causes of action do not depend on the allegations of protected litigation conduct to state a claim. (*Park*, *supra*, 2 Cal.5th at p. 1068.) Nor are the discrete allegations of incurred defense costs subject to being stricken under the *Baral* approach, as they do not independently support a right to relief— that is, Veeva does not seek to recover its defense costs incurred in the federal and New Jersey actions as restitution in the UCL causes of action. Under *Baral*, only allegations of protected activity that "support[] a claim for recovery" are subject to the anti-SLAPP statute. (*Baral*, *supra*, 1 Cal.5th at p. 394.) Accordingly, we agree with the trial court that the fifth and sixth causes of action do not arise from protected activity.

To summarize, the trial court correctly found that the first, second, third, fifth, and sixth causes of action did not arise from protected activity, and that the fourth and seventh causes of action did. Thus, the burden shifts to Veeva to show a probability of success on the fourth and seventh causes of action.

## C. Second Prong—Probability of Success

"To demonstrate a probability of prevailing on the merits, the plaintiff must show that the complaint is legally sufficient and must present a prima facie showing of facts that, if believed by the trier of fact, would support a judgment in the plaintiff's favor." (*Hall*, *supra*, 153 Cal.App.4th at p. 1346.) "Only a ' "minimum level of legal sufficiency and triability" ' is needed to satisfy the second prong of the anti-SLAPP statute. [Citation.] The evidence

22

favorable to the plaintiff is accepted as true, while the defendant's evidence is evaluated to determine if it defeats the plaintiff's claim as a matter of law, e.g., on grounds of privilege or immunity." (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 490.)

Defendants raise a host of challenges to Veeva's ability to show probable success on its claims. Medidata argues there is no case or controversy because (1) Veeva lacks standing to seek a judicial determination on NCA/NDAs to which it is not a party, (2) Medidata has not prevented any former employee from working for Veeva, and (3) Medidata already complies with California law. Medidata further contends that for purposes of the UCL Veeva did not suffer any economic injury because of Medidata, and that there are no exceptional circumstances to support an antisuit injunction that extends to defendants in a foreign jurisdiction. For its part, Sparta contends that Veeva's attempt to apply Business and Professions Code section 16600 beyond California's borders is at odds with recent Supreme Court decisions addressing the applicability of Labor Code section 226's wage statement requirements for employers of flight attendants who do not perform a majority of their work in any one state. (See *Ward v. United Airlines, Inc.* (2020) 9 Cal.5th 732; *Oman v. Delta Air Lines, Inc.* (2020) 9 Cal.5th 762.) Additionally, both defendants contend that Veeva's claims are barred by the litigation privilege of Civil Code section 47, subdivision (b). We need not address each and every one of these contentions, as we agree that Veeva's fourth and seventh causes of action are barred by the litigation privilege.

Civil Code section 47, subdivision (b), provides in pertinent part that "[a] privileged publication or broadcast is one made . . . [i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding

23

authorized by law[.]" The privilege is "relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing." (*Flatley*, *supra*, 39 Cal.4th at p. 323.) "This privilege is absolute in nature, applying 'to *all* publications, irrespective of their maliciousness.' " (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.) "Any doubt about whether the privilege applies is resolved in favor of applying it." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 913 [*Kashian*].)

"The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 (*Silberg*).) The privilege has been held to cover the filing of pleadings (*Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 415; see *Kashian*, *supra*, 98 Cal.App.4th at pp. 920–921), and prelitigation demand letters (see *Blanchard v. DIRECTV, Inc.* (2004) 123 Cal.App.4th 903, 920–922).

Veeva contends the litigation privilege does not apply here because Veeva asserts only declaratory relief and UCL claims that do not seek to hold defendants liable in tort. While courts have generally stated that the litigation privilege bars " ' "*tort* actions *based on* privileged communications, excepting only the tort of malicious prosecution" ' " (*Lunada Biomedical*, *supra*, 230 Cal.App.4th at p. 479, some italics added, citing *McClintock v. West* (2013) 219 Cal.App.4th 540, 554), application of the privilege has not been limited to tort actions. (See *Feldman*, *supra*, 160 Cal.App.4th at pp. 1495–1498 [applying litigation privilege to breach of contract and UCL claims].) As the Supreme Court explained in *Rubin v. Green* (1993) 4 Cal.4th

1187, "[i]f the policies underlying [Civil Code] section 47(b) are sufficiently strong to support an absolute privilege, the resulting immunity should not evaporate merely because the plaintiff discovers a conveniently different label for pleading what is in substance an identical grievance from identical conduct as that protected by [Civil Code] section 47(b)." (*Rubin, supra*, 4 Cal.4th at pp. 1202–1203 [applying litigation privilege to UCL claim].)

Here, if we look past the labeling of the fourth and seventh causes of action, it is clear the litigation privilege would apply. These claims are based on defendants' efforts to enforce the NCA/NDAs, which include their communicative acts of serving prelitigation letters demanding that defendants' former employees honor the NCA/NDAs and their filing of pleadings in the federal and New Jersey actions alleging violations of the NCA/NDAs. All of these communicative acts were made to achieve the objects of litigation and have some connection or logical relation to the federal and New Jersey actions. (*Silberg, supra*, 50 Cal.3d at p. 212.) Moreover, the policies underlying the privilege (e.g., allowing access to courts without fear of harassing derivative actions) would be furthered by application of the privilege. (*Feldman, supra*, 160 Cal.App.4th at pp. 1485–1486.) Simply labeling these claims as brought under the UCL and Declaratory Judgment Act does not avoid the litigation privilege. Because we must resolve any doubts in favor of applying the litigation privilege (*Kashian, supra*, 98 Cal.App.4th at p. 913), we conclude it applies to Veeva's declaratory relief and UCL claims.

Veeva further contends the privilege should not apply to the UCL claims based because the litigation privilege arguably conflicts with California's pro-competition laws like the UCL. In support of this contention, Veeva observes that courts have found exceptions to the litigation privilege

based on "irreconcilable conflicts between the privilege and other coequal state laws." (*People v. Persolve, LLC* (2013) 218 Cal.App.4th 1267, 1274 (*Persolve*).) "The recognition of these exceptions has been guided by the ' "rule of statutory construction that particular provisions will prevail over general provisions." ' [Citation.] If a statute is more specific than the litigation privilege and would be significantly or wholly inoperable if the privilege applied, the privilege will not shield violations of that statute." (*Persolve*, at p. 1274.)

In *Persolve*, the court recognized an exception to the litigation privilege for UCL claims based on California's Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788 et seq.) and the federal Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.), both of which prohibit unfair or deceptive acts or practices in the collection of consumer debts. In so doing, *Persolve* reasoned that "[a]pplying the privilege to unlawful practices based on specific violations of the California Act and the Federal Act would effectively render the protections afforded by those acts meaningless." (*Persolve, supra*, 218 Cal.App.4th at pp. 1276–1277.) *Persolve* distinguished two cases, *Rubin, supra*, 4 Cal.4th 1187, and *People ex rel. Gallegos v. Pacific Lumber Co.* (2008) 158 Cal.App.4th 950 [UCL action by district attorney alleging lumber company committed fraud during administrative proceedings]), because in those cases, "application of the litigation privilege did not render the prohibitions underlying the unfair competition claims significantly or wholly inoperable." (*Persolve*, at p. 1277.)

Unlike the borrowed consumer debt statutes in *Persolve*, which specifically prohibited the very conduct underlying the UCL claims, the borrowed statute here—Business and Professions Code section 16600—does not specifically prohibit prelitigation and litigation activities to enforce

26

noncompete agreements. Furthermore, application of the litigation privilege would not render Business and Professions Code section 16600 "significantly or wholly inoperable" (*Persolve, supra*, 218 Cal.App.4th at p. 1277), and Veeva's surviving claims in the CSAC demonstrate that the two can be reconciled. That is, a California-based employer who recruits or hires an individual subject to an NCA/NDA executed in another state and who wishes to challenge the agreement on the grounds that it illegally includes within its scope the provision of services in California can allege declaratory relief and UCL claims based on the dispute over the legality and scope of the NCA/NDA, while avoiding any challenge to the former employer's prelitigation or litigation efforts to enforce that agreement.

On the record before us, there appears no irreconcilable conflict between the Civil Code section 47, subdivision (b), litigation privilege and Business and Professions Code section 16600, and thus, no exception to the privilege for the fourth and seventh causes of action. Accordingly, Veeva fails to show a probability of success on these claims.

### D. Attorney Fees and Costs

Veeva requests an award of attorney fees and costs against defendants for prosecuting a frivolous appeal. According to Veeva, even if this court partially affirms the trial court's decision as to the fourth and seventh causes of action, it should still award Veeva its attorney fees and costs for defendants' frivolous appeal as to the court's ruling on the remaining claims.

Section 425.16, subdivision (c)(1), provides in pertinent part that "[i]f the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5." " 'Frivolous in this context means that any reasonable attorney would

27

agree the motion was totally devoid of merit.' " (*L.A. Taxi Cooperative, Inc. v. The Independent Taxi Owners Assn. of Los Angeles* (2015) 239 Cal.App.4th 918, 932 (*L.A. Taxi*); see § 128.5, subd. (b)(2) [" 'Frivolous' means totally and completely without merit or for the sole purpose of harassing an opposing party"].)

While appellate attorney fees under section 425.16, subdivision (c), are recoverable (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 785), Veeva's request, presented in its respondent's brief and not by motion with a supporting declaration, does not comply with California Rules of Court, rule 8.276(b)(1).[11] (See *FEI Enterprises, Inc. v. Yoon* (2011) 194 Cal.App.4th 790, 807 [declining to consider sanctions request on appeal for failure to comply with rule 8.276(b)(1)].)

Veeva's citation to *Changsha Metro Group Co., Ltd. v. Peng Xufeng* (2020) 57 Cal.App.5th 1 (*Changsha Metro*) does not persuade us that rule 8.276 is inapplicable to a request for fees for a frivolous anti-SLAPP appeal. In *Changsha Metro*, the court held it was proper for a plaintiff to request sanctions for a frivolous anti-SLAPP motion in its opposition brief because the interplay between the 21-day safe harbor requirement for section 128.5 sanctions motions, the time limits for opposition briefs (§ 1005, subd. (b)), and the 30-day clock for hearings on anti-SLAPP motions (§ 425.16, subd. (f)) made the separate motion requirement impracticable. That rationale simply has no application here.

Veeva further contends that rules 8.278 (costs on appeal) and 3.1702 (claims for statutory and contractual attorney fees), not rule 8.276, govern a request for attorney fees arising from a frivolous anti-SLAPP appeal. We are not convinced, as rule 8.276 explicitly governs appeals that are frivolous or

---

[11]    Further rule references are to the California Rules of Court.

28

solely to cause delay.  (Rule 8.276(a).)  Meanwhile, rule 3.1702 provides no assistance to Veeva, as it also requires the filing of a motion to claim attorney fees on appeal.  (Rule 3.1702(b), (c).)

In any event, even assuming a separate motion was not required, Veeva fails to demonstrate its entitlement to sanctions under section 425.16, subdivision (c).  We see no basis to conclude the appeals were brought "solely" to cause "unnecessary" delay (§ 425.16, subd. (c)(1)), nor do we find that defendants' appeals were "totally and completely without merit" from the standpoint of a reasonable attorney.  (§ 128.5, subd. (b)(2) [defining "frivolous"]; *L.A. Taxi*, *supra*, 239 Cal.App.4th at p. 932.)  Defendants' arguments were objectively sound and rooted in published—albeit distinguishable—authorities.  Accordingly, we deny Veeva's request for attorney fees.

## DISPOSITION

The order on defendants' anti-SLAPP motions is affirmed.  Veeva's request for appellate attorney fees under section 425.16, subdivision (c) is denied.  In the interests of justice, each party shall bear its own costs on appeal.

_____

Fujisaki, J.

WE CONCUR:


_____

Tucher, P. J.


_____

Petrou, J.


A158736, A159062