Filed 4/22/22  Larson v. Roberts CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| DIANE M. LARSON et al.,<br><br>　　　Cross-complainants and<br>　　　Respondents,<br><br>　　　v.<br><br>NANCY L. ROBERTS,<br><br>　　　Cross-defendant and Appellant. | H047381<br>(Santa Clara County<br>Super. Ct. No. CV336725) |

Nancy L. Roberts appeals the partial denial of her motion to strike pursuant to Code of Civil Procedure section 425.16,[1] the anti-SLAPP statute.[2]

After Roberts filed a quiet title action against her two siblings and their mother, the siblings filed a cross-complaint alleging causes of action for breach of contract and declaratory relief regarding a previous settlement agreement between the parties.  Roberts filed an anti-SLAPP motion, contending both causes of action arose from the protected petitioning activity of her initial complaint.  The trial court granted the motion as to the breach of contract cause of action and a portion of the declaratory relief cause of action that was predicated on the alleged breach, but denied it as to the remainder.

---

[1] Unspecified statutory references are to the Code of Civil Procedure.

[2] An anti-SLAPP motion is a "special motion to strike a 'strategic lawsuit against public participation (SLAPP).' " (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 773-774.)

Roberts contends on appeal that the trial court improperly treated the allegations within the declaratory relief cause of action as distinct claims, and that the whole cause of action should be stricken because it arises entirely from the petitioning activity of her initial lawsuit and respondents cannot demonstrate the requisite merit to survive the motion.

We conclude that the declaratory relief claim alleges multiple acts that supply a basis for relief. We further conclude that the remaining allegations that an actual controversy exists regarding the validity of the parties' settlement agreement are not subject to the anti-SLAPP statute because they did not arise from the petitioning activity. Accordingly, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Siblings Nancy L. Roberts, Diane M. Larson and Lawrence K. Larson have jointly owned multiple properties in Santa Clara County with their mother, Elizabeth J. Larson, over the past three decades.[3] The parties have transferred the properties, or the divided interests therein, numerous times in an attempt to minimize estate and property taxes and for other reasons. The complaint and cross-complaint at issue in this appeal stem from disputes regarding two particular jointly owned properties in Cupertino (Aster Lane property) and Los Gatos (Hershner property).

### A. Previous litigation and settlement

The three siblings initially held title to the Aster Lane property in equal one-third interests. Their legal disputes began in 2016, when Diane and Lawrence filed a partition action against Roberts seeking to force a sale of the property. Diane and Lawrence wanted to sell the property but Roberts, who was living there at the time, did not.

---

[3] Because Diane, Lawrence and Elizabeth share the same surname, we refer to them in this opinion by their first names. In this appeal, Roberts is the appellant and Diane and Lawrence are the respondents; Elizabeth is not a party.

The parties eventually resolved the matter through mediation and executed a "Settlement Agreement and Mutual Release" in August 2016 (2016 agreement). The 2016 agreement provided that Roberts would buy out her siblings' respective $500,000 shares in the property if she could obtain the requisite financing by the end of 2017. If she could not obtain the financing by then, the property would be sold, Diane and Lawrence each would receive $500,000 of the proceeds, while Roberts would receive the rest. The 2016 agreement also contained a mutual release provision through which the parties agreed to release all potential claims that could have been alleged in the action.

Roberts qualified for a refinancing loan but became concerned that the property tax basis would be reassessed upon purchase of her siblings' shares. To address that concern, the parties modified the 2016 agreement by executing a second settlement agreement in February 2017 (2017 agreement). The 2017 agreement added Roberts' husband and Elizabeth as parties and provided for title to be transferred through Elizabeth in two steps, rather than directly from Diane and Lawrence to Roberts. The parties believed this would preserve the tax basis by utilizing child-parent transfers.

The 2017 agreement also broadened the release clause to cover all potential claims "arising from the ownership or the transfers of ownership of any properties once owned by Elizabeth J. Larson or her Trust, to Lawrence, Diane or Nancy." The broader release clause developed during the negotiation process for the 2017 agreement. Respondents' attorney explained the intent of the broader clause at the time: "once the properties change hands (I hope, for the last time), there will be an understanding that no one— including Nancy's husband, who is now party to this transaction, has any claims against anyone else, arising from the prior ownership or transfers of the family properties," and that "this family needs a full and final release from each other." Roberts initially resisted the broader release clause but eventually relented and signed the 2017 agreement.

3

### B. Roberts' complaint

In September 2018, Roberts sent a letter to an attorney she believed represented respondents and Elizabeth, demanding that record title to the Hershner property be transferred back into Roberts' name to reflect what she claimed was her respective 49.5 percent ownership interest. When that was not forthcoming, she filed a first amended complaint (complaint) in October 2018 against Diane, Lawrence and Elizabeth, asserting causes of action for quiet title, partition, promissory fraud, breach of fiduciary duty, dissolution, declaratory relief, common count of money had and received, and accounting, all relating to the Hershner property.[4] The complaint generally alleged that, although record title to the Hershner property is currently held by Diane's trust, Roberts is in fact a fee simple owner of a 49.5 percent legal and equitable interest in the property. Roberts claims that Diane, Lawrence and Elizabeth fraudulently induced her to transfer her interest in the property to a family partnership, created for investment purposes, by falsely representing that her interest would be held in trust for her.

### C. Cross-complaint and anti-SLAPP motion

Shortly after the complaint was filed, counsel for Diane and Lawrence sent a letter to Roberts' attorney demanding that Roberts dismiss the complaint; he argued that the Hershner property fell within the scope of the release clause in the 2017 agreement, so the complaint was barred. Roberts' attorney rejected the demand and asserted Roberts' position that the 2017 agreement was void and unenforceable because the consideration—the series of transfers designed to preserve the property tax basis—was done for tax evasion purposes and was therefore illegal.

On February 19, 2019, respondents filed their answers and a cross-complaint. The cross-complaint asserts causes of action for breach of contract and declaratory relief.

---

[4] The complaint also named the Larson-Hershner Partnership, a family partnership created to hold title to the Hershner property, and two lenders as defendants.

The breach of contract cause of action alleges that the filing of the complaint breached the 2017 settlement agreement because the parties had agreed to release such claims. The declaratory relief cause of action alleges that an actual controversy exists, in that respondents contend, and Roberts denies, that: (a) the 2017 agreement was validly entered into and is in full force and effect, (b) the filing of the complaint was a violation of the 2017 agreement, and (c) Roberts is obligated to reimburse respondents for all costs, attorney fees and expenses incurred therein.

Roberts filed an anti-SLAPP motion, arguing that both causes of action should be stricken because they arose entirely from the protected petitioning activity of her complaint, and the 2017 agreement is unlawful so respondents cannot establish the requisite merit to survive the motion.

### D. *Trial court ruling on the anti-SLAPP motion*

The trial court granted the motion as to the breach of contract cause of action, holding that it arose entirely from the protected activity of filing the complaint and that respondents had failed to provide evidence showing the claim was legally sufficient. With respect to the declaratory relief cause of action, the trial court granted the motion in part, and denied it in part. It granted the motion as to the allegation that a controversy exists regarding whether the filing of the complaint constituted a violation and breach of the 2017 agreement, determining that the claim arose from petitioning activity and respondents failed to introduce any evidence to show the claim had the requisite merit.

However, the trial court denied the motion as to the remainder of the declaratory relief cause of action. The court explained that the cause of action is not based solely on the stricken allegation regarding the filing of the complaint constituting a breach of the 2017 agreement. Instead, it also separately alleges that a controversy exists regarding the validity of the 2017 agreement and whether Roberts is obligated to reimburse respondents for costs and attorney fees, allegations which Roberts did not address in her motion.

Roberts timely appealed the court's order on the anti-SLAPP motion.

5

## II. DISCUSSION

Roberts argues on appeal that (1) the trial court improperly treated the allegations in the declaratory relief cause of action as distinct claims, rather than as "a single claim that seeks to establish three components necessary for the relief they seek"; (2) even if considered separately, the claim that an actual controversy exists regarding the 2017 agreement arises entirely from Roberts' protected activity of filing the complaint; and (3) respondents failed to carry their burden in the second step of the anti-SLAPP analysis of demonstrating their claim has sufficient merit.

### A. Standard of review

We review de novo the grant or denial of an anti-SLAPP motion. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).) We exercise our independent judgment "in determining whether, based on our own review of the record, the challenged claims arise from protected activity." (*Ibid.*) In doing so, "[w]e consider the pleadings and declarations, accepting as true the evidence that favors the plaintiff and evaluating the defendant's evidence ' " ' "only to determine if it has defeated that submitted by the plaintiff as a matter of law." ' " ' " (*Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 745, 759, quoting *Barry v. State Bar of California* (2017) 2 Cal.5th 318, 321.)

### B. Overview of governing anti-SLAPP law

An anti-SLAPP motion allows a defendant to seek "early judicial screening of legal claims targeting free speech or petitioning activities." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 880-881.) The statute is " 'designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern. [Citations.] To that end, the statute authorizes a special motion to strike a claim "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." ' " (*Bonni v. St. Joseph*

6

*Health System* (2021) 11 Cal.5th 995, 1008-1009 (*Bonni*), quoting *Wilson*, *supra*, at pp. 883-884; § 425.16, subd. (b)(1).)

A plaintiff's claim "arise[s] from" protected petitioning activity when the defendant's activity underlies or forms the basis for the claim. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 (*Cotati*).) However, "a claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity. Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Park*, *supra*, 2 Cal.5th at p. 1060.)

Merely because an action is filed after, or in response to, protected activity " 'does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.' " (*Park*, *supra*, 2 Cal.5th at p. 1063 quoting *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*).) "Instead, the focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.' " (*Park*, *supra*, at p. 1063 quoting *Navellier*, *supra*, at p. 92, italics omitted.) In ruling on an anti-SLAPP motion, "courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park*, *supra*, at p. 1063.)

Resolution of an anti-SLAPP motion entails a two-step process. "First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.] Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit." ' [Citation.] If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni*, *supra*, 11 Cal.5th at p. 1009.)

In many instances, a plaintiff pleads a " 'mixed cause of action' " that includes allegations of both protected and unprotected activity. (See *Baral v. Schnitt* (2016) 1 Cal.5th 376, 381 (*Baral*).) In such circumstances, "the moving defendant must identify the acts alleged in the complaint that it asserts are protected and what claims for relief are predicated on them. In turn, a court should examine whether those acts are protected and supply the basis for any claims. It does not matter that other unprotected acts may also have been alleged within what has been labeled a single cause of action; these are 'disregarded at this stage.' " (*Bonni*, *supra*, 11 Cal.5th at p. 1010, quoting *Baral*, *supra*, at p. 396.)

Therefore, "[a]nalysis of an anti-SLAPP motion is not confined to evaluating whether an entire cause of action, as pleaded by the plaintiff, arises from protected activity or has merit. Instead, courts should analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion." (*Bonni*, *supra*, 11 Cal.5th at p. 1010.)

### C. *The declaratory relief cause of action alleges multiple acts supplying a basis for relief*

Roberts argues that the trial court improperly treated the allegations in the declaratory relief cause of action as distinct claims, rather than as "a single claim that seeks to establish three components necessary for the relief they seek." We disagree.

The declaratory relief cause of action alleged that "[a]n actual controversy now exists between cross-complainants and cross-defendant in that the cross-complain[ants] contend, and cross-defendant apparently [denies], the following: [¶] (a) that the [2017 agreement] was validly entered into and is in full force and effect[;] [¶] (b) that the filing of the instant lawsuit is a violation and breach of the [2017 agreement]; and (c) [¶] that

8

[cross-defendant is] further obligated to reimburse cross-complainants for all costs, attorneys' fees and expenses incurred, and to be incurred, herein."

It also realleged and incorporated by reference the previous allegations in the cross-complaint, which included all allegations set forth in the breach of contract cause of action. Those included allegations regarding the correspondence between attorneys for the parties in which they set forth their competing positions regarding the validity of the 2017 agreement. The declaratory relief cause of action is therefore read as if it contains each such allegation. (*Del Mar Beach Club Owners Assn. v. Imperial Contracting Co., Inc.* (1981) 123 Cal.App.3d 898, 908.)[5]

Roberts argues that the allegations regarding the existing controversies are not separate claims for relief, but rather constitute "elements of a single claim," which has "three integrated components, each of which would be necessary for [r]espondents to establish their claim." Accordingly, she argues that the trial court erred by "dissecting" the declaratory relief cause of action and striking only the allegation that the filing of the complaint breached the 2017 agreement.

We do not construe the declaratory relief cause of action that way. Instead, the cause of action asserts multiple acts which independently supply a basis for relief. These allegations are not inter-dependent elements of a single claim.

As our Supreme Court has recently explained, "courts should analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a singled pleaded cause of action—to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive

---

[5] We construe the cross-complaint as having incorporated the previous allegations by reference into the declaratory relief cause of action before the breach of contract cause of action was stricken. Roberts has not addressed or argued this issue on appeal; accordingly, the point has been waived. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)

9

the motion." (*Bonni*, *supra*, 11 Cal.5th at p. 1010.)  To the extent a cause of action alleges "various acts as a basis for relief and not merely as background, each act or set of acts must be analyzed separately under the usual two-step anti-SLAPP framework." (*Id.* at p. 1012.)  Where "a cause of action contains multiple claims and a moving party fails to identify how the speech or conduct underlying some of those claims is protected activity, it will not carry its first-step burden as to those claims." (*Id.* at p. 1011.)

Evaluating the allegations in the declaratory relief cause of action here in this manner, we determine, as the trial court did, that the cause of action contains multiple claims.  While the allegation of an actual controversy based on whether the filing of the complaint constituted a breach of contract must be stricken, the declaratory relief cause of action also separately alleges that a controversy exists regarding whether the 2017 agreement was validly entered into and is in full force and effect, and whether Roberts is obligated to reimburse respondents for costs and attorney fees.[6]

In ruling on an anti-SLAPP motion, a court must consider the elements of the challenged claim and what actions by the defendant supply those elements and form the basis for liability.  (*Park*, *supra*, 2 Cal.5th at p. 1063.)  A claim is subject to an anti-SLAPP motion "if its elements arise from protected activity." (*Bonni*, *supra*, 11 Cal.5th at p. 1015.)  However, it does not follow, as Roberts contends, that the allegations here constituted elements of a "single claim," or that the allegation regarding breach of contract was a "necessary predicate" for the other declarations sought.  Instead, it merely means that a court must consider the elements of the challenged claim.

Roberts cites *Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559 (*Wilson*), for the proposition that a claim for declaratory relief consists

---

[6] Roberts did not challenge these particular allegations below.  Although we may consider any challenge to these allegations waived, we elect to exercise our discretion to decide this argument on the merits.  (*Vivian v. Labrucherie* (2013) 214 Cal.App.4th 267, 273 (*Vivian*).)

10

of the essential elements of (1) a proper subject of declaratory relief and (2) an actual controversy involving justiciable questions relating to their rights and obligations. In *Wilson*, the court explained that an actual controversy must relate to the legal rights and duties of the parties, and not extend to potential controversies that are conjectural, anticipated to occur in the future, or constitute an attempt to obtain an advisory opinion from the court. (*Id.* at p. 1582.) Here, the declaratory relief claim does allege an actual controversy that is not conjectural—the parties' existing disagreement regarding the validity of the 2017 agreement.

Roberts insists that the trial court struck a "critical component" of the declaratory relief claim—the allegation regarding breach of the 2017 agreement—so that respondents "can obtain no relief from the partial request the court left intact." We do not agree. The remaining allegations adequately allege the elements of a declaratory relief claim regarding an actual controversy as to the validity of the 2017 agreement. (*Wilson*, *supra*, 191 Cal.App.4th at p. 1582.)

Roberts argues that, in assessing whether the anti-SLAPP statute applies, courts "routinely evaluate the various elements of declaratory relief sought as a complete claim, not separate claims, as the trial court did here." However, the authority she relies on does not support that proposition. In *Lunada Biomedical v. Nunez* (2014) 230 Cal.App.4th 459, for instance, the court held that a complaint for declaratory relief brought in response to service of a pre-litigation notice under the Consumers Legal Remedies Act arose from protected activity and was subject to the anti-SLAPP statute. The court stated that, " 'whether a cause of action is subject to a motion to strike under the SLAPP statute turns on whether the gravamen of the cause of action targets protected activity.' " (*Id.* at p. 473.) Applying that standard, the court held that the pre-suit notice and related correspondence were the basis of the declaratory relief cause of action, which therefore arose out of the protected activities. (*Ibid.*)

11

In *Bonni*, however, the California Supreme Court expressly rejected this so-called gravamen approach. (*Bonni*, *supra*, 11 Cal.5th at pp. 1009-1010.) The court reiterated that "[a]nalysis of an anti-SLAPP motion is not confined to evaluating whether an entire cause of action, as pleaded by the plaintiff, arises from protected activity or has merit. Instead, courts should analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion." (*Id*. at p. 1010, citing *Baral*, *supra*, 1 Cal.5th at pp. 393-395.)[7]

Roberts also analogizes to *Moss Bros. Toy, Inc. v. Ruiz* (2018) 27 Cal.App.5th 424 (*Moss Bros.*), where the court stated that, although the complaint at issue alleged three causes of action, it "effectively pleads a single 'claim' " for breach. (*Id.* at p. 434.) In *Moss Bros.*, the plaintiff filed a breach of contract action against an employee based on his filing of a class-action complaint rather than submitting his employment-related disputes to arbitration. (*Ibid*.) The court affirmed the granting of the employee's motion to strike because the entire complaint was based on the protected act of filing the complaint. (*Ibid*.)

But *Moss Bros.*—which did not deal with a declaratory relief claim—does not support Roberts' argument that the trial court improperly treated the allegations in the declaratory relief cause of action as distinct claims. Nor does it stand for any kind of broad proposition regarding how to dissect claims for relief; rather, the court merely

_____

[7] Roberts contends the ongoing relevance of the gravamen approach is "unclear" following *Baral*. We do not believe it is unclear in light of *Bonni*. However, the case did identify an important distinction between the gravamen theory it rejected—when used "to determine the essence or gist of a so-called mixed cause of action"—and use of "gravamen" as a *label* "to determine whether particular acts alleged within the cause of action supply the elements of a claim (see *Park*, *supra*, 2 Cal.5th at p. 1063) or instead are incidental background." (*Bonni*, *supra*, 11 Cal.5th at p. 1012.)

12

evaluated the particular claims alleged in that complaint and determined that they all arose from protected activity. (*Moss Bros*., *supra*, 27 Cal.App.5th at p. 434.)[8]

Roberts' reliance on *CKE Restaurants*, *Inc*. *v*. *Moore* (2008) 159 Cal.App.4th 262 (*CKE*), is similarly misplaced. In that case, the plaintiff filed a declaratory relief action in response to the defendant's service of a 60-day notice of intent to sue under Proposition 65, the Safe Drinking Water and Toxic Enforcement Act of 1986. (*CKE*, *supra*, at pp. 265-266.) The Court of Appeal concluded that the action arose from the protected activity of filing the Proposition 65 notice and was properly subject to a motion to strike. (*Ibid*.) But the case did not address the argument Roberts makes here that respondents alleged a single claim "with three integrated components, each of which would be necessary . . . to establish their claim."

The same is true of *Takhar v*. *People ex rel*. *Feather River Air Quality Management Dist.* (2018) 27 Cal.App.5th 15 (*Takhar*), which Roberts cites. Roberts claims *Takhar* held that "any elements of the claim that arguably did not arise directly out of petitioning activity were nonetheless 'within the protected "breathing space" of the right of petition if that conduct is (1) incidental or reasonably related to [petitioning activity] and (2) the petition, litigation, or claim is not a sham.' " Roberts misreads the opinion. The court applied the " ' "breathing space" ' " concept when evaluating whether particular activity was protected in the first place. (*Takhar*, *supra*, at p. 29.) Only after that did the court separately evaluate whether the lawsuit arose from that protected activity. (*Ibid*.) But we are not confronted with that issue here; there is no dispute the

---

[8] In fact, the court discussed the "critical distinction, in the anti-SLAPP context, between claims based on the protected act of filing a lawsuit and claims based *solely* or distinctly on the alleged breach of an agreement, and similar claims for declaratory relief," recognizing the cases that have reached a contrary result where a declaratory relief claim was based on an independent dispute regarding the validity of an agreement or law. (*Moss Bros*., *supra*, 27 Cal.App.5th at p. 438.) We address this in section II.D. below.

13

filing of the complaint was protected activity. The question Roberts has presented is whether the allegations in the declaratory relief cause of action must be treated as a single claim, and *Takhar* has no bearing on that.

Roberts argues that "[r]espondents pled their declaratory relief claim as a legal conclusion that a valid and enforceable agreement was breached entitling them to damages, rather than as a *request* for interpretation of an agreement." But Roberts again ignores the allegation that an actual controversy exists regarding whether the 2017 agreement was validly entered into and is in full force and effect, as well as the request for a judicial declaration as to that validity. Respondents expressly requested a judicial declaration of the parties' rights and duties with respect to, among other things, whether "the Settlement Agreement and Mutual Release was validly entered into and is in full force and effect."

In sum, the declaratory relief claim alleges multiple acts that supply a basis for relief and we treat the allegations as distinct claims rather than as a single claim. (*Bonni*, *supra*, 11 Cal.5th at p. 1010.) As our Supreme Court recently explained, "[t]he attempt to reduce a multifaceted cause of action into a singular 'essence' would predictably yield overinclusive and underinclusive results that would impair significant legislative policies. Striking a cause of action that rests in part on unprotected activity constrains a plaintiff's ability to seek relief without advancing the anti-SLAPP's goals of shielding protected activity, which would have been fully served by striking from the complaint only the allegations of protected activity. Conversely, refusing to strike any part of a cause of action that rests in part on protected activity defeats the legislative goal of protecting defendants from meritless claims based on such conduct." (*Id.* at p. 1011.)

### D. *The allegation of an actual controversy regarding the validity of the 2017 agreement does not arise from protected activity*

As noted above, "a claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity,

14

or that was thereafter communicated by means of speech or petitioning activity." (*Park*, *supra*, 2 Cal.5th at p. 1060.) Instead, "a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Ibid*.)

The trial court based its ruling on two cases—*Cotati*, *supra*, 29 Cal.4th 69, and *City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301 (*Alhambra*)—in which the courts determined that claims for declaratory relief, although filed in response to petitioning activity, nevertheless did not "arise from" that activity because the petitioning activity itself was not the wrong complained of. We discuss those cases in turn and explain why we find them analogous as well.

In *Cotati*, mobilehome park owners sued the city in federal court, seeking a declaration that the city's rent control ordinance was unconstitutional. (*Cotati*, *supra*, 29 Cal.4th 69.) In response, the city sued the owners in state court, seeking a declaration that the ordinance was constitutional. (*Id*. at p. 71.) The California Supreme Court held that the city's lawsuit did not "arise from" the owners' protected activity of filing the initial federal lawsuit, but instead arose from the parties' underlying dispute over whether the ordinance was constitutional, a dispute that existed independent of the owners' petitioning activity. (*Id*. at p. 78; *Park*, *supra*, 2 Cal.5th at p. 1063.)

The city argued that the initial lawsuit merely *informed* it of the existence of the controversy, not that the lawsuit constituted the controversy itself. (*Cotati*, *supra*, 29 Cal.4th at p. 79.) The court agreed, explaining that the distinction between the lawsuit itself and the controversy underlying the lawsuit "is not an ephemeral or merely formalistic one." (*Id*. at p. 80.) The court noted that the city's complaint alleged " '[a]n actual controversy has arisen and now exists between plaintiff and defendants relative to their respective rights and duties in that plaintiff contends that the ordinance and resolution are valid and enforceable, both on their face and as construed by plaintiff.' " (*Id*. at p. 79.) The owners' affidavits and allegations in the federal lawsuit also confirmed

15

that an actual dispute existed between the parties regarding the constitutionality of the ordinance.  (*Id*. at pp. 79-80.)

The same is true here, where the pleadings, affidavits and supporting papers demonstrate that the relevant portions of respondents' declaratory relief claim arose from the dispute regarding the validity of the 2017 agreement, not from Roberts' petitioning activity.  In point of fact, the cross-complaint alleges that "[a]n actual controversy now exists between cross-complainants and cross-defendant in that the cross-complain[ants] contend, and [cross-defendant] apparently [denies], the following: [¶] (a) that the [2017 agreement] was validly entered into and is in full force and effect. . . ."

The cross-complaint also alleges that the correspondence between the parties' attorneys revealed the underlying dispute.  The November 2018 letter from respondents' attorney to Roberts' attorney asserted that the 2017 agreement is valid and operative:  the "plain language of the Settlement Agreement and Mutual Release entered into in February, 2017, covers the Hershner Drive property.  Nancy, knowingly and with the advice of counsel, waived her rights to seek any sort of remuneration from any of the properties once owned by her mother."

In response, Roberts' attorney communicated Roberts' contrary position that the 2017 agreement is invalid:  "Simply put, the entire [2017 agreement] . . . is void and unenforceable . . . ."  The letter explained in detail the various bases for Roberts' contentions, including that the 2017 agreement was based on illegal consideration, is illegal because it was designed to evade taxes, and violates the step transaction doctrine.[9]

---

[9] The step transaction doctrine " 'is a corollary of the general tax principle [that] the incidence of taxation depends upon the substance of a transaction rather than its form.' "  (*Penner v. County of Santa Barbara* (1995) 37 Cal.App,4th 1672, 1679, quoting *Shuwa Investments Corp. v. County of Los Angeles* (1991) 1 Cal.App.4th 1635, 1648.)  The doctrine "treats a series of nominally separate transactional 'steps' as a single transaction if the steps are, in substance, interdependent and focused toward a particular result."  (*Penner*, *supra*, at p. 1679.)

The parties' answers confirm that a dispute exists over the validity of the 2017 agreement, independent of the filing of Roberts' complaint. Both Diane's and Lawrence's answers to Roberts' initial complaint alleged that the 2017 agreement is operative and valid. Conversely, Roberts' answer to respondents' cross-complaint alleged that the 2017 agreement "became unlawful by including [Elizabeth] in a sham transaction for the sole purpose of evading property tax reassessment," and "because it undermines the public policy of the parent-child exemption in section 63.1 of the Revenue and Taxation Code." She prays for a declaration that the 2017 agreement be declared unlawful.

This evidence demonstrates that the dispute underlying respondents' claim for declaratory relief at issue here is the validity of the 2017 agreement and Roberts' contention that it is invalid, not Roberts' filing of the complaint. While it is true that, based on the record before this court, respondents became aware of the dispute when Roberts filed her complaint and the parties' attorneys subsequently exchanged correspondence, a claim is not subject to an anti-SLAPP motion simply because it contests an action "that was thereafter communicated by means of speech or petitioning activity." (*Park*, *supra*, 2 Cal.5th at p. 1060.) As in *Cotati*, this distinction between the lawsuit itself and the controversy underlying the lawsuit "is not an ephemeral or merely formalistic one." (*Cotati*, *supra*, 29 Cal.4th at p. 80.)

The California Supreme Court illustrated this distinction when comparing *Cotati* to *Navellier*.[10] In *Navellier*, in contrast to *Cotati*, the initial lawsuit *was* "an essential part of the activity allegedly giving rise to liability." (*Park*, *supra*, 2 Cal.5th at p. 1063.) The plaintiffs in *Navellier* "sued for breach of contract and fraud, alleging the defendant had

---

[10] *Navellier* was decided as a companion case with *Cotati*, along with *Equilon Enterprises*, *LLC v. Consumer Cause*, *Inc*. (2002) 29 Cal.4th 53. (*Navellier*, *supra*, 29 Cal.4th at p. 85, fn. 2.)

17

signed a release of claims without any intent to be bound by it and then violated the release by filing counterclaims in a pending action in contravention of the release's terms. Unlike in *City of Cotati*, the defendant was 'being sued because of the affirmative counterclaims he filed in federal court. In fact, but for the federal lawsuit and [the defendant's] alleged actions taken in connection with that litigation, plaintiffs' present claims would have no basis. This action therefore falls squarely within the ambit of the anti-SLAPP statute's "arising from" prong.' " (*Ibid.*, quoting *Navellier*, *supra*, 29 Cal.4th at p. 90.)

The court added that, "[w]hile in both cases it could be said that the claim challenged as a SLAPP was filed *because of* protected activity, in that perhaps the *City of Cotati* plaintiff would not have filed suit had the defendant not done so first, in only *Navellier* did the prior protected activity supply elements of the challenged claim." (*Park*, *supra*, 2 Cal.5th at p. 1064.) In *Navellier*, specific elements of the plaintiffs' claims "depended upon the defendant's protected activity. The defendant's filing of counterclaims constituted the alleged breach of contract." (*Ibid.*, citing *Navellier*, *supra*, 29 Cal.4th at p. 87.)

This distinction is evident here as well when comparing the allegations at issue to the allegations stricken by the trial court. As summarized above, the trial court determined that the entire breach of contract cause of action, as well as the allegation in the declaratory relief cause of action regarding the breach, arose from the protected activity of Roberts' complaint. Although that portion of the ruling is not before us, the contrast is clear and instructive. Without Roberts' complaint, an essential element of the breach of contract cause of action would not exist, as was the case in *Navellier*. But even without the complaint, there is still an actual controversy between the parties regarding the validity of the 2017 agreement. It is that activity—Roberts' contention that the 2017 agreement is illegal and void—that supplies the essential element of the relevant portion of respondents' declaratory relief claim. Stated simply, the dispute over the validity of

18

the 2017 agreement exists independent of Roberts' complaint, even though the complaint may have alerted respondents to the dispute.

Roberts' attempts to distinguish *Cotati* are unavailing. She argues that unlike *Cotati*, where the plaintiff could demonstrate the existence of a bona fide controversy between the parties supporting a claim for declaratory relief without the prior suit, respondents here would not have filed the cross-complaint "but for" their belief that Roberts' complaint violated a contract between them. However, as *Cotati* and *Park* make clear, merely because an action is filed in response to petitioning activity does not mean that it "arise[s] from" that activity within the meaning of the anti-SLAPP statute. (*Cotati*, *supra*, 29 Cal.4th at p. 78; *Park*, *supra*, 2 Cal.5th at p. 1060; see also *C.W. Howe Partners Inc. v. Mooradian* (2019) 43 Cal.App.5th 688, 703 (*C.W. Howe*) [discussing inherent flaw in utilizing simple " 'but for' " analysis after *Park*].) If Roberts' complaint were dismissed, the controversy over the 2017 agreement would still exist. Roberts appears to recognize this reality elsewhere, as she affirmatively states that "[t]he [2017 agreement] is the subject of the Cross-Complaint at issue in this appeal."[11]

*Alhambra* is also on point. The appellant in that case, D'Ausilio, was a former employee of the city who had served as president of the Alhambra Firefighter's Association. (*Alhambra*, *supra*, 193 Cal.App.4th at p. 1303.) After he sued the city, alleging civil rights violations in connection with an investigation and discipline of his workplace conduct, the parties resolved the matter with a settlement agreement in which

---

[11] Roberts also argues this case is different from *Cotati* because the complaint and cross-complaint are not based on the same underlying case or controversy and do not have the same "fundamental basis." But we do not read *Cotati* as establishing any kind of rule that, where a cross-complaint does not have the same "fundamental basis" as an earlier-filed complaint to which it responded, the cross-complaint is subject to the anti-SLAPP statute. On the contrary, in *Cotati*, the court merely explained that because the fundamental basis of each request for declaratory relief was the same—the underlying controversy over the ordinance—it was additional evidence that the city's lawsuit did not arise from the owners' initial lawsuit. (*Cotati*, *supra*, 29 Cal.4th at pp. 79-80.)

D'Ausilio agreed to stop advocating on behalf of the city's firefighters. (*Id.* at p. 1304.) However, D'Ausilio then advocated that the firefighters join a planned demonstration against the city and participated in a protest against the city. (*Ibid.*)

The city informed D'Ausilio he was in breach of the settlement agreement and demanded that he cease his activities. (*Alhambra*, *supra*, 193 Cal.App.4th at p. 1304.) After he refused to confirm that he would comply with the settlement agreement, the city sued for declaratory relief, alleging an actual controversy existed between the parties regarding their rights and duties under the settlement agreement. (*Ibid.*) D'Ausilio filed his own action in federal court, alleging a nearly identical declaratory relief claim. (*Id.* at p. 1305.) After that case was remanded back to state court, he filed an anti-SLAPP motion to strike the city's declaratory relief claim. (*Ibid.*)

The Court of Appeal concluded that the city's declaratory relief claim did not arise from D'Ausilio's protected activities, but rather from "an actual, present controversy between the parties regarding the scope and enforceability of . . . the settlement agreement." (*Alhambra*, *supra*, 193 Cal.App.4th at p. 1307.) The court reached that conclusion based on the allegations in the city's complaint, the admissions in D'Ausilio's answer, the "nearly identical declaratory relief claim alleged by appellant in his counterclaim against the City, and the federal court's order remanding the action." (*Ibid.*) In addition, "the appellant's anti-SLAPP motion acknowledges that '[t]his lawsuit arises out of a Settlement Agreement . . . executed between the City and Defendant Robert D'Ausilio.' " (*Id.* at pp. 1307-1308.)

Analogizing to *Cotati*, the court held that "[w]hile appellant's protected speech activities may have alerted the City that an actual controversy existed regarding the legality of [the settlement agreement], the speech itself does not constitute the controversy. The City did not sue appellant because he engaged in protected speech; the City sued him because it believed he breached a contract which prevented him from engaging in certain speech-related conduct and a dispute exists as to the scope and

20

validity of that contract." (*Alhambra*, *supra*, 193 Cal.App.4th at p. 1308.) The court added that "[t]he declaratory relief claim arises from a contract dispute; it does not arise from actions taken by appellant in furtherance of his constitutional rights." (*Id*. at p. 1309.)

Similarly here, respondents' claim that an actual controversy exists regarding the validity of the 2017 agreement arises from the parties' dispute regarding that agreement, not from the filing of the complaint.

Roberts' attempts to distinguish *Alhambra* are unavailing. First, she claims the case "did not involve petitioning activities in purported breach of an agreement," yet that is precisely what *Alhambra* involved: "the City sued him because it believed he breached a contract which prevented him from engaging in certain speech-related conduct." (*Alhambra*, *supra*, 193 Cal.App.4th at p. 1308.) She then argues this case is distinct because she did not file a declaratory relief action as D'Ausilio did in *Alhambra*. However, D'Ausilio's lawsuit in *Alhambra* merely comprised part of the evidence of the underlying dispute regarding the parties' settlement agreement; there is other such evidence here of the dispute regarding the 2017 agreement, and the absence of an identical declaratory relief action by Roberts does not undermine it.

Roberts then contends that this case is unlike *Alhambra* because respondents' claims in the cross-complaint expressly allege that Roberts is in breach of the 2017 agreement "through her petitioning activity." (Italics omitted.) Yet while the breach of contract cause of action made that allegation, the relevant claim at issue here alleged something different: that there is an actual controversy regarding the validity of the 2017 agreement because Roberts contends it is illegal and unenforceable.

Roberts relies on *Mundy v. Lenc* (2012) 203 Cal.App.4th 1401 (*Mundy*), and *Long Beach Unified School District v. Margaret Williams, LLC* (2019) 43 Cal.App.5th 87 (*Williams*) to distinguish *Alhambra*, but those cases do not compel a contrary result here. In *Mundy*, after the plaintiff sued a business owner for various Americans with

Disabilities Act (ADA) violations, the parties executed a settlement agreement in which the plaintiff agreed to a release of further ADA claims against the owner. (*Mundy, supra*, at pp. 1404-1405.) Shortly thereafter, the plaintiff sued the owner again, alleging additional ADA violations. (*Id.* at p. 1405.) The owner filed a cross-complaint alleging breach of contract for violating the settlement agreement. (*Ibid.*) The plaintiff filed an anti-SLAPP motion, and the court held that the cross-complaint for breach of contract arose from the protected activity of filing the complaint because the claim alleged that the plaintiff had breached the settlement agreement by filing a complaint against the owner in a second action. (*Ibid.*)

The court rejected the owner's attempt to analogize to *Alhambra*, explaining that "[t]he dispute in [*Alhambra*] arose over the enforceability and scope of a settlement agreement and not from the plaintiff's exercise of the right of petition." (*Mundy, supra*, 203 Cal.App.4th at p. 1409.) The same is true here, where the controversy alleged in the declaratory relief claim arose over the validity of the 2017 agreement, not from Roberts' filing the complaint.

In *Williams*, a contract dispute arose between a school district and Williams, who was hired to perform construction management and environmental compliance work. (*Williams, supra*, 43 Cal.App.5th at pp. 90-92.) After the district terminated the contract, Williams sued, alleging the termination was retaliatory. (*Ibid.*) The district then invoked an indemnity provision in the recently terminated contract and demanded that Williams defend against her own lawsuit. (*Ibid.*) When she refused, the district filed a cross-complaint for breach of contract based on the refusal to indemnify. (*Ibid.*) Williams filed an anti-SLAPP motion. (*Ibid.*)

The court held that the district's claim for breach of contract arose from the protected activity of Williams' initial complaint. (*Williams, supra*, 43 Cal.App.5th at p. 98.) As the court explained, the claim for indemnity "would have no basis without the [u]nderlying [a]ction in which it seeks to be defended and indemnified." (*Ibid.*)

22

The court distinguished *Alhambra* because, in that case, "the controversy underlying the declaratory relief action 'did not involve the filing of a lawsuit that resulted in the [asserted] breach,' " whereas in *Williams*, the controversy involved just that—the filing of Williams' lawsuit that resulted in the asserted duty to indemnify and breach thereof. (*Id.* at p. 98, fn. 6, quoting *Mundy*, *supra*, 203 Cal.App.4th at p. 1409.)

Here, again, respondents' claim for declaratory relief arises from the independent controversy regarding the validity of the 2017 agreement, a controversy that would exist even without Roberts' complaint.

Roberts also cites *Country Side Villas Homeowners Asson. v. Ivie* (2011) 193 Cal.App.4th 1110 (*Country Side*), arguing it demonstrates the differences between *Alhambra* and this case. In *Country Side*, a homeowners' association sued a homeowner after she objected to the association's interpretation of its by-laws, requested certain financial data from it, and refused to sign a confidentiality agreement related to the requested data. (*Id.* at p. 1112.) The lawsuit sought, among other things, declaratory relief regarding the interpretations of the by-laws at issue. (*Ibid.*) The homeowner filed an anti-SLAPP motion, contending the lawsuit arose from her protected activity of complaining about the association's governing activities, which were matters of public concern. (*Ibid.*) The court held that the lawsuit arose from the homeowner's exercise of her right of free speech in criticizing and speaking out against the association. (*Ibid.*)

According to Roberts, *Country Side* stands for the broad proposition that where a complaint seeks declaratory relief and damages, the entirety of the declaratory relief claim arises from protected activity. That misstates the holding. Instead, the fact that the association sought damages from the owner was just one piece of evidence which, in the aggregate, demonstrated that the action arose from her criticizing and speaking out against the association and refusing to sign the confidentiality agreement, rather than from an actual controversy over the interpretation of the by-laws. (*Country Side*, *supra*, 193 Cal.App.4th at p. 1118.) As the court explained, "the action in this case was filed

23

after Country Side's counsel threatened to sue Ms. Ivie if she continued to request the financial documents and refuse to sign the confidentiality agreement. Ms. Ivie did refuse to sign the agreement, and continued to speak out against Country Side. In response, Country Side filed suit against her seeking declaratory relief and attorney fees." (*Ibid.*) Here, by contrast, the evidence in the record does not reflect that respondents' declaratory relief claim was brought to target Roberts' petitioning activity.

The other cases Roberts relies on are also distinguishable. Both *Moss Bros.* and *Vivian* dealt with breach of contract actions based exclusively on the underlying petitioning activity, rather than on an underlying controversy that was the subject of a separate declaratory relief claim. (*Moss Bros.*, *supra*, 27 Cal.App.5th 424; *Vivian*, *supra*, 214 Cal.App.4th 267; see also *C.W. Howe*, *supra*, 43 Cal.App.5th at pp. 701-702 [distinguishing *Moss Bros.*, *Vivian*, and *Navellier* because in those cases, the petitioning activity itself constituted the alleged breach].)

In *CKE*, the lawsuit was a preemptive action that directly targeted the appellant's petitioning conduct. (*CKE*, *supra*, 159 Cal.App.4th at p. 271.) Without the appellant's notice of intent to sue letter, " 'there would have been no actual, present controversy, and no controversy at all.' " (*Ibid.*) By contrast, the relevant portion of respondents' declaratory relief claim here does not challenge or target the merits of Roberts' complaint; instead, it alleges an actual and present controversy regarding the validity of the 2017 agreement and, without Roberts' complaint, that controversy would still exist.

And in *Takhar*, the declaratory relief cause of action specifically sought a declaration that the district was wasting its resources by enforcing fugitive dust regulations against the landowner. (*Takhar*, *supra*, 27 Cal.App.5th at p. 31.) For that reason, the court explained that the request for declaratory relief arose out of the enforcement action itself. (*Id.* at p. 32.) Here, by contrast, respondents seek a declaration that the 2017 agreement was validly entered into and is in full force and effect.

We briefly address Roberts' remaining contentions on appeal. She argues that because there is no evidence of a controversy regarding the 2017 agreement *before* the filing of the complaint, the cross-complaint necessarily arises from the complaint. But there is no such rule regarding the chronology of events; on the contrary, the authorities discussed above demonstrate that the existence of a controversy may sometimes be discovered or communicated via protected activity. It does not necessarily follow that a declaratory relief action filed in response thereto arose from that protected activity.

Lastly, in her reply brief, Roberts objects to respondents' characterization of their cross-complaint as seeking a declaration regarding the enforceability and viability of the transfer of the Aster Lane property. We agree with Roberts that the cross-complaint does not make any specific allegations regarding the validity of the Aster Lane property transfer. But, as Roberts also points out, the issues are framed by the pleadings and we view the cross-complaint as alleging that a controversy exists regarding the validity of the 2017 agreement that is independent of the filing of the complaint. While we reject respondents' attempts to broaden the scope of their cross-complaint, it does not alter the allegations in the declaratory relief cause of action.

Because we conclude that the remaining claims in the declaratory relief cause of action did not arise from petitioning activity, we need not reach the second prong of the anti-SLAPP analysis. (*Sutter Health Uninsured Pricing Cases* (2009) 171 Cal.App.4th 495, 513-514.) For that reason, we also deny respondents' request for judicial notice of documents supporting their arguments relating to the second prong. (*People v. Rowland* (1992) 4 Cal.4th 238, 268, fn. 6.)[12]

_____

[12] The trial court's order also left intact the final allegation in respondents' declaratory relief cause of action: that an actual controversy exists regarding whether Roberts is "further obligated to reimburse [respondents] for all costs, attorneys' fees and expenses incurred, and to be incurred, herein." Roberts has not expressly argued on appeal that, even if viewed as a stand-alone request, that particular allegation arises from protected activity, focusing instead on the allegation that a controversy exists as to (continued)

### III.    DISPOSITION

We affirm the trial court's order on the motion to strike the cross-complaint.
Respondents are awarded their costs on appeal.

---

whether the 2017 agreement is valid and enforceable.  Accordingly, we do not address it.
(*Claudio v. Regents of the Univ. of California* (2005) 134 Cal.App.4th 224, 230 [review
limited to issues which have been adequately raised and briefed].)

_____
Wilson, J.

WE CONCUR:


_____
Elia, Acting P.J.


_____
Bamattre-Manoukian, J.


<u>Roberts v. Larson</u>
H047381